Oakley, J.
This is an action on a fire policy, dated January the 5th, A. D. 1827. The property insured is described in the policy, as “a framed building in three tenements, situate on the “corner of New-York Wharf and Commerce-street, in the city of " Mobile, privileged to contain hazardous goods, per report No. " 36,748, filed in the Washington Office” The application for insurance, bears date at Mobile, on the 23d of Nov. 1826, and gives a description of the premises to be insured; and, with a view to point out their situation with respect to contiguous buildings, there is subjoined to, or inserted in the application, a map or diagram, on which the store of the plaintiff is marked out, and also two stores adjoining thereto; and in the rear of the whole, the word “ vacant” is written. The New-York Wharf and Commerce-street, mentioned in the policy, are laid down on the diagram, and also two other streets, called Alabama-street and Water-street, forming in the whole a square, or parallelogram. The plan or map contains no building except the three stores abovementioned,—all of which front on Commerce-street.
At the trial, the defendants offered to prove, that subsequently to the insurance, the plaintiff had erected other buildings, immediately contiguous to the store insured, and on the ground represented as vacant, and that the risk of loss was thereby increased. The Judge rejected the evidence, unless the defendants meant to show that the intention of the plaintiff, at the time of effecting the insurance, was to erect these buildings, and that he had concealed that intention, or that the fire was occasioned by, or originated in the adjacent buildings so erected. To this decision of the Judge, the defendants excepted, and the first and principal question arising in this case is, whether the fact offered to be proved, would have avoided the policy.
It is contended, in the first place, that the application for insurance with the diagram, being referred to in the policy as a report on file in the Washington Office, is thereby incorporated in *646 it, and is a warranty, not only that the ground marked on the diagram as vacant, was really so at the time, but that it should continue vacant during the running of the policy, and that the subsequent erection of any building, by the plaintiff, on such vacant ground, was a breach of the warranty.
It would be a sufficient answer to this position, to say, that there is no evidence in the case, showing that the application for insurance, is the report which the policy refers to. But as it seems to have been so considered at the trial, it is proper to assume the fact to be so, for the purposes of the present discussion.
In the case of Delonguemare v. The Tradesmens' Ins. Co. (ante, p. 580,) we had occasion to consider how far a general reference in a policy to a description of the insured property, on file in the office of the assurers, constituted that description a part of the contract, and converted it into a warranty; and the conclusion arrived at was, that no representation ought to be held to be a warranty, except it -appeared on the face of the policy. The principles which led to that result, in that case, apply with greater force to the present; as the reference here, to the description of the premises, is less distinct and precise.
It is contended, in the second place, that the description of .the vacant ground adjacent to the insured premises, whether •considered as a warranty or a representation, was binding on the plaintiff, during the continuance of the policy; and that he had no right to erect buildings on such vacant ground, especially if such erections increased the risk.
It is clear, that there is no express prohibition in the policy against the erection of new buildings, contiguous to those insured; and it is difficult to see on what ground any such prohibition can be implied. The defendants have, by the terms of the policy, guarded against an increase of the risk, by an appropriation of the building insured to any hazardous business, or to the storing of hazardous goods not specially authorized, by suspending the policy during the continuance of the increased risk. They have not thought proper to introduce any such stipulation with respect to an increase of the risk, by the erection of adjacent *647 buildings ; and it would be unreasonable to imply a prohibition of so important a character, when the party has omitted to express it.
Although the policy, in my judgment, is not rendered void by the subsequent erection of buildings adjacent to those insured, it by no means follows, that the insurers are compelled to bear any loss, which may be the result of such an act on the part of the assured. The contract of insurance, has its foundation in the mutual good faith of the parties. If the assured violates that good faith, in any circumstance entering into the creation of the contract, it is no doubt void. But if, subsequently to its formation, he acts with fraud, or gross negligence, or in bad faith, with respect to the subject matter insured, his rights, under the contract are not impaired, unless the loss, which he seeks to recover, is the result of his own misconduct. It is a general principle, that no man can derive a right of action against another, from his own violation of duty, or from his own illegal acts. Thus there is no stipulation in this policy, that the assured shall not set fire to the buildings insured. If he had done so, hé could not recover the loss, on the ground, not that he had violated any stipulation in the contract, but that he could not profit by the consequences of his own illegal or fraudulent acts. If, however, he had set fire to an adjoining building with the intent to consume the one insured, but no injury to that had in fact ensued, it could not have been contended, that the policy was thereby rendered void; notwithstanding the act would have been in the highest degree a violation of the good faith which was pledged to the insurers, that the risk should not be increased by any act of the assured.
An erection of buildings on vacant ground, by the assured, subsequently to the policy, and contiguous to those insured, whereby the risk is increased, stands upon the same principle. If buildings thus erected, should be removed before the occurrence of any loss, it could not be maintained that the policy would be thereby annulled. The act, not being in violation of any express stipulation in the policy, and not resulting in any actual injury to the insurers, the law would regard it as harmless and rightful; *648 and if this be so, it seems clearly to follow, that the continuance of such erections, (as in the case now before us,) until the fire; cannot change the legal consequences of the act of erecting them, if they have in no way been the cause of the loss. The act of the assured in erecting them, may have been a breach of an implied understanding between the parties, that the situation of the insured premises, with respect to the contiguous buildings, should not be changed by the act of the assured so as to increase the risk; but if such increase of risk, has in fact, been without injury to the defendants, I hold that the policy is not affected by it.
Upon this view of the case I ruled at the trial, that evidence of the erection of buildings, by the assured, on the ground represented as vacant was immaterial, unless the defendants could show, that the fire which caused the loss originated in the buildings thus erected, or was communicated by them to the insured premises. The application of this principle to the case, seems to me to preserve unimpaired the rights of all the parties. The policy continues binding on the defendants, as to the risks, fairly assumed, while they cannot suffer from the acts of the plaintiff, by which those risks are alleged to have been increased. I think, therefore, that there was no error in the decision of the Judge, in excluding the evidence offered by the defendants on this point.
The defendants also offered to prove, that it is the usage at New-Tork, in case of the occurrence of any circumstance by the act of the assured, after effecting the insurance, whereby the risk is increased, for the assured to give notice thereof to the insurer, who is then to have the option of continuing the policy, or of annulling it. This evidence was also rejected by the Judge. It is contended by the defendants, that there was error in this respect also.
This evidence, it still appears to me, was properly rejected, on two grounds, 1st, that the usage offered to be proved was a local one, applying only to insurances on property, in the city of New-York; and 2dly, that if it were a general usage, it could not be given in evidence, to alter the legal operation and effect of the policy. It was not offered to explain the meaning, or extent of any stipulation expressed in the contract, but with a view to introduce into it, an entirely new and distinct condition.
*649 The Judge also left it to the jury to decide, how far the plaintiff’s representation by the diagram, of the vacant ground in the rear of the insured premises extended, whether to Water-street, or to an alley dividing the lots fronting on Water-street, from those fronting on Commerce-street, which alley was laid down on the said diagram. The defendants now contend, that this was matter of law, and should have been determined by the court. As a general rule, the construction of written documents offered in evidence is matter of law; but in the present instance, that rule does not seem applicable. The effect of the diagram or map in question, could be ascertained only by determining the extent, to which the word “ vacant” was intended to be applied, and this depended on the location of the word on the paper, and by its relative situation with the various streets and alleys laid down on the map. It seemed necessary, therefore, to submit the paper to the inspeetion of the jury; and it was their province to ascertain the facts which were to be inferred from it.

Motion for a new trial denied.

[D. Lord, Att’y for the plff. Ogden and Huggins, Att'ys for the defts.]