DE LAFAYETTE SCHENCK v. THE MERCER COUNTY MUTUAL FIRE INSURANCE COMPANY.

1. In an action on an insurance policy that requires immediate notice of loss to be given, if loss by fire on the 10th of the month be proven, and that notice was mailed on the 11th and received by the 15th of the same month, this is sufficient notice.

2. If an insurance company after receiving an insufficient notice of loss examine the claim and refuse to pay it exclusively for other reasons, this is a waiver of objection to the notice.

3. If a policy of insurance require that notice shall be given to the company of any alterations which tend to increase the risk within twenty

days or the insurance becomes void, and alterations are made and no notice given, it is a question of fact for the jury whether such alterations tend to increase the risk.

4. It is not error to ask a witness who was an experienced and practical fireman, whether, *in his opinion*, the risk from fire was increased by certain alterations in a building; for such purpose he is an expert.

5. When a policy of insurance requires notice of a subsequent insurance to be given to the company, written notice is not necessary; verbal notice to any officer, director or proper agent of the company is sufficient; but a conversation about the intention to make such subsequent insurance in presence of an agent of the company is not sufficient notice.

6. If a subsequent insurance of which notice is not given to the insurer is by a policy which is *prima facie* void, want of notice of such policy will not defeat a recovery on first policy.

This was an action on a policy of insurance tried at the Monmouth Circuit before Justice POTTS. A verdict was rendered for the plaintiff. A rule was granted to show cause why the verdict should not be set aside and a new trial granted.

The rule was argued by Mr. *E. Scudder* and Mr. *Randolph*, for the defendants; and Mr. *Vredenburg* and Mr. *Dayton*, for the plaintiff, before the CHIEF JUSTICE and Justices POTTS and ELMER.

The facts upon which the questions arose were stated in the opinion of the court, delivered by Justice POTTS.

POTTS, J.   Two several policies of insurance against fire were issued by the defendants, the first on the 20th June, 1846, to Schenck and Thompson, for $2500; the second on the 1st September, 1847, to Schenck, for $1200. The property insured was that at the time known as the Pavilion, at Keyport. In 1848 a policy of insurance was obtained on the same property from the Clinton Company, at Newark, for $2000. Some alterations were made subsequent to the insurances, and on the 10th of August, 1851, the buildings insured were burned, the loss being total, and exceeding the whole amount insured. The defendants refused to pay the two policies, alleging that the insured had not complied with the conditions of the contract on their part, and Thompson having died, this suit was brought by Schenck as

survivor, and a verdict rendered for the plaintiff for $4153.86, the amount of these policies with interest. The defendants now move for a new trial on several grounds.

1. That notice of the loss was not given to the company in time. The buildings were burned at Keyport, Monmouth county, on the 10th of August, and notices of the loss, dated on the 11th, were received by the secretary of the company at Pennington, in Mercer county, as early as the 15th of the same month, by mail. There was no evidence to show what was the course of the mail between the two places, nor how long it took for a letter to pass from one office to the other by that means of conveyance. The policies required *immediate* notice to be given, but the secretary took no exception to the notices at the time, and the court told the jury that this objection was not sustained. I am still of the same opinion. If the notices were mailed on the day of their date, it was all the plaintiff was bound to do. The production of the notices by the defendants, dated on the 11th, and admitted to have been received by mail, is evidence of diligence sufficient to put the defendants to prove when they were received. This the secretary does not prove—he says, the notices were received in August; he don't remember the exact date of their receipt; they were received, he supposes, by due course of mail. It is true the secretary in his letter of the 15th, says the notices were received "this evening." But that does not prove they had not reached the post office at Pennington before he received them. Due diligence is all that is required, and it was held in *St. Louis Ins. Co.* v. *Kayle,* 11 *Missouri R.,* that under the circumstances of that case, notice on the fourth day after the fire was sufficient. And, besides this, the secretary, on receiving the notices, informed the insured party that prompt steps would be taken to examine and adjust the matter, and in the resolutions of the company subsequently adopted, they put their refusal to pay exclusively on the ground of non-compliance on the part of the insured, with the sixth and twelfth articles of the deed of settlement. This was a waiver of their objection on the part of the company. *Clark* v. *New Eng. Mu. Ins.*

Co., 6 Cush. 342; Underhill v. The Agawam Mu. F. Ins. Co., 6 Cush. 480.

2. The next ground taken is that material alterations, tending to increase the risk were made in the buildings insured, subsequent to the policies, and without notice to the company. The sixth article of the deed of settlement, as it is called, and which is annexed to and made a part of the contract of insurance, provides, that " if any alteration which shall *tend to increase the risk*, shall be made in any building or buildings insured by this company, such alterations shall be reported to the office by the insured, *within thirty days* after the same shall have been made, and the additional premium which may be required by the managers shall be paid, otherwise the insurance shall become void." There was no notice of the alterations reported to the office within the time limited, and the question submitted to the jury upon the evidence was, whether the alterations were such as " tended to increase the risk "—if they were, the plaintiff was in default, if not, notice was unnecessary. There was a good deal of evidence bearing upon this question. A shed adjoining the stables was raised two stories, and a ball alley and sleeping rooms arranged in them, between the dates of the first and second policies, and some other trifling improvements were made at the same time. The company estimated the risk on the second insurance at the same rate, viz., three per cent., as they did on the first, from which the inference was, I think, fairly deducible, that in their estimation the general risk was not increased by these improvements. At a later period, a new story was put upon the wing of the Pavilion, which increased the number of lodging rooms of the establishment and its means of accommodating boarders, and some other alterations of minor consequence were made. This was after the date of the last policy. The question whether particular alterations or additions made to buildings insured, increase the risk of their destruction by fire, is a question of fact to be submitted to the sound sense and intelligence of the jury. *Grant* v. *Howard Ins. Co.*, 5 *Hill*, 15; *Stebbins* v. *The Globe Ins. Co.*, 2 *Hall*, 632; *Stetson* v.

*Mass. Mut. Ins. Co.*, 4 *Mass.* 330; *Curry* v. *Com. Ins. Co.*, 10 *Pick.* 452; *Merriam* v. *Mid. Mut. Ins. Co.*, 21 *Pick.* 162. The jury were instructed that such was their province, and upon a review of the evidence I see no reason to conclude that they reached a wrong result. I see nothing in the character of the alterations and additions made, which would have called for a higher rate of premium than before, and this was held to be the test in 21 *Pick.* 164. The additions made were of the same general character as the original buildings, and used for the same general purpose of affording accommodations to summer boarders. Nothing was added which was more combustible in its nature, or more hazardous in its uses.

3. A third ground urged is that Henry S. Lloyd, a witness produced by the plaintiff, was permitted to testify that in his judgment the putting of the third story on the wing of the Pavilion did not increase the risk. When the question was first put to him it was overruled, but upon his testifying that he had been for ten years a member of a fire company in New York; had been an assistant foreman, and acted as an officer of the company for two years; was in the constant habit of attending fires and engaged in putting them out, he was allowed by the court to give his opinion as an *expert*. I think he was, within the fair construction of the rule, 1 *Greenleaf Ev.* § 440. If the secretary of a fire insurance company, accustomed to examine buildings with reference to the insurance of them, is competent as an expert to testify as to what will increase the risk, a man who for a long course of years has been dealing practically with the risks themselves, it would seem is equally entitled to be relied on to express an opinion on such a subject. Lloyd was at the fire, and actively engaged in attempting to extintinguish it. He had an opportunity to observe the arrangement of the buildings, the nature of the additions made, and the progress of the flames. I cannot see that there was error in the admission of his opinion.

4. The next ground of objection to this verdict is raised upon the twelfth article of the deed of settlement. The

article is in these words. "All and every person insuring in this company must give *notice* of any *other insurance* effected in their behalf on said property, and cause such insurance to be endorsed on their policies, in which case each office shall be liable to the payment only of a ratable proportion of any loss or damage which may be sustained ; and unless *such notice* is given, the insured shall not be entitled to recover in case of loss or damage." The defendants proved that on the 7th December, 1848, the plaintiff, with Thompson, obtained a policy of insurance on this property, in the Clinton Mutual Insurance Company, at Newark, for $2000, which was in existence at the time of the loss. And the question made was whether notice of this subsequent insurance was given to the defendants according to the terms of the above article. There was no endorsement upon the defendant's policies. Mr. Wiley, the secretary of the Mercer Company, testified that he *thought* no notice was ever given to the defendants of the Clinton Insurance ; that he found none in his office, and knew of none. The plaintiff then called Uriah Smalley, who testified that he was present when Thompson, Higgins (the agent of the Mercer Co.,) and Roberts (the agent of the Clinton Co.,) were at Thompson's house (the property insured) ; that Thompson told Higgins he was going to get his property insured in this other company ; that Roberts was, he believed, making a survey of the buildings with Thompson ; they were all in the building ; don't recollect the sum named ; Roberts was, he thinks, making the survey at the time ; Mr. Higgins was around with him some part of the time ; thinks the amount was $2500. Bernard Connally, another witness for the plaintiff, testified that he recollected hearing Higgins say "there was an additional insurance effected on this property by the Clinton Company ; thinks it was about $2000 ; he said so at my house ; he had been down to Keyport around insuring, and was on his way home ; can't tell how long this was before he died ; he died, I think, in 1849, April or May ; it was probably in the fall before that we had this conversation ; we were talking about the operations of that

company in the county; Higgins had got the information while down at Keyport," &c. The plaintiff then recalled Mr. Wiley, who testified that traveling agents were never authorized to receive notices of any kind; "that if there was any previous insurance, the agents report that; all subsequent insurances are reported to the company; does not know that agents have authorized alterations that have afterwards been approved by the company; we have sometimes received information of alterations through our traveling agents and approved them; sometimes verbal notices of alterations have been sent and acted on." This was the substance of the evidence on the question of notice, and the court left it to the jury, with the instruction that if it appeared to their satisfaction that notice in fact was given to the board, or to any officer or agent of the company whose duty, by the by-laws, resolutions or usages of the company, it was, receiving such notice, to communicate it to the company, whether given verbally or in writing, it was sufficient. But that the declaration of a traveling agent, that he knew, or had been informed that the plaintiff had effected a subsequent insurance in the Clinton Company, without any time being specified when such declaration was made, or when, or how such information was obtained, and without any evidence of such knowledge or notice being brought home to the company, or the secretary, was not notice.

The instruction to the jury was right. The only question is, whether the evidence warranted the verdict. It has been held, and I think correctly, that when a notice of the existence of another policy is required in *such loose phraseology* as we find in this article, it is not necessary that it should be in writing—verbal notice is sufficient. Nor is it necessary it should be given to the board of directors of the company, or their president or secretary; if given to an agent of the company employed to solicit risks and negotiate contracts for the company with anybody and everybody who may wish to insure, it is sufficient; for third persons dealing with such an one have a right to judge of the extent of his authority

from the nature and course of the business in which he is employed, without being affected by any special instructions or other limitation of his authority, which do not come to their knowledge. *McEwen* v. *Montgomery Co. Ins. Co.*, 5 *Hill*, 99. If the defendants require a more strict rule as to notice than this, they have only to say in their contracts of insurance that the notice should be in writing, and given to some specified officer of the company, within a specified time. But the question in this case is whether the evidence proves any notice at all—whether there was anything from which the jury could fairly infer notice to the agent.— In the case last cited, verbal notice of the existence of another policy was proved to have been given to the agent while he was in the act of effecting the insurance. Here the direct evidence only amounts to this, that Higgins was by when the Clinton Co.'s agent was making the survey, and that he spoke of the insurance as within his knowledge. It is going too far to say that the mere fact of knowledge by an agent is notice. Upon this point I think the evidence was not sufficient to support the verdict.

But here another question presents itself. To defeat a recovery upon the policies issued by the defendants on the ground of a subsequent insurance in the Clinton Company, without notice to the defendants, it was necessary that it should have been made to appear, *prima facie*, at least, that the Clinton policy was a valid subsisting contract. The production of a *void policy* was not sufficient. The court charged the jury, that for the purposes of that trial, the Clinton policy must be *held as valid*. Now, this policy contained an express condition, " that if the insured shall have already procured any *other insurance*, &c., which according to the *annexed conditions*, should have been *specified in the application*, for this insurance, &c., the same shall be *void* and of *no effect*." The annexed conditions directed that " no insurance shall be made, except when the application of the person to be insured, signed by him, and stating," among other things, *" the amount of every other insurance,* if any, on the same property."  But a certified copy of the

application of Thompson and Schenck for this insurance in the Clinton Company was produced in evidence by the defendant on the trial below, and upon the face of that application it appears that no notice of the insurance of $1200 in the Mercer Company, effected September 1, 1847, was contained in it. This fact seems to have been overlooked in the haste of the trial at the Circuit. The court was misled by the testimony of the witness, Mr. Sherman, who said that " the *application showed the fact of other policies.* I understood the only serious question as to the validity of that policy, was the question of increased risk by alterations without notice—the same as that raised in the case at issue. But it now appears upon the very face of the proof offered by the defendants of the subsequent insurance in the Clinton Co., that Schenck and Thompson had failed to give notice in their application of the $1200 policy—a failure which rendered the contract void; *Duncan* v. *Sun F. I. Co.,* 6 *Wendell,* 494; 6 *Cush,* 342; 23 *Pick.* 418, 423; 2 *Watts and Sergt.* 544, 545, and the Clinton policy should have been ruled out, or the jury instructed that the defendants had failed to show a valid insurance in the Clinton Co. There being no valid insurance in the Clinton Company shown, it was entirely immaterial whether notice of it was given to the defendants or not, and therefore the verdict of the jury cannot be set aside upon this ground.

CHIEF JUSTICE and ELMER, J., concurred.

Motion for new trial denied.