JOHN T. ROBINSON *vs.* THE MERCER COUNTY MUTUAL FIRE INSURANCE COMPANY.

1. A proviso in a policy of insurance, that if the premises above mentioned shall, at any time when such fire shall happen, be in whole or in part occupied for purposes considered hazardous, unless liberty so to occupy them be expressly stipulated for, this policy shall be void, *held* to apply to a building in which a printing press that was insured was contained, and to that into which it was subsequently removed by consent of the insurers.

2. The addition of a steam engine, cupola furnace, foundry, and blacksmith forge to a back building connected with that containing the press, *held* to be evidence of an increase of risk, such as was forbidden by the proviso.

3. If there is no stipulation in the policy against an increase of the risk, good faith requires the assured, if he exposes the property to a risk far more hazardous than could have been contemplated by the insurers, to notify them of the change, and a neglect to do so may be considered evidence of gross negligence, which will avoid the policy.

---

This was an action of covenant, commenced in the Supreme Court, on a policy of insurance.

The cause was tried at the Mercer Circuit, at April Term, 1857, and a verdict rendered for the plaintiff for the amount of the insurance and interest. On the return of the *postea* to this court, the defendants obtained a rule to show cause why the verdict should not be set aside, and a new trial granted. The facts in the case and the points made on the argument sufficiently appear in the opinions delivered in this court.

Argued at February Term, 1858, before the CHIEF JUSTICE, and Justices ELMER, HAINES, and VREDENBURGH.

*W. L. Dayton,* for the defendants.

*Hageman* and *Field*, for the plaintiff.

ELMER, J. This is an action of covenant on a policy of insurance, bearing date April 27th, 1846, whereby the defendants insured the plaintiff, to the amount of $400, against damage or loss by fire, for ten years, upon "a new double Adams printing press, contained in a frame building in the rear of the printing office, in a room sixteen by eighteen feet, said press, with its fixtures, being valued at $600." On the 13th of March, 1847, the secretary of the company endorsed on the policy, " the property described and insured in the annexed policy has been removed to a brick building, known as the Robert Voorhees property, on the north side of Nassau street, in Princeton, and the company hereby signify their consent to such removal." The press remained in the last-mentioned building until it was destroyed by fire in June, 1855. No other description of the property or of the building was given but that above stated.

Following the description and valuation of the property, the policy contains this proviso: "Provided that if the premises above mentioned shall, at any time when such fire shall happen, be in whole or in part occupied for purposes considered hazardous, unless liberty so to occupy them be expressly stipulated for, this policy, and every clause, article, and thing therein contained, shall be void and of no effect." Annexed are various conditions. The sixth is—"If any alterations which tend to increase the risk shall be made in any building or buildings insured by this company, such alterations shall be reported to the office of the insured within thirty days after the same shall have been made, and the additional premium which may be required by the managers paid, otherwise the insurance shall become void." The ninth is—"If any furniture or personal property insured in this policy shall be removed from the dwelling or other building where the same is stored or located at the time of effecting such in-

surance, this policy shall be null and void and of no effect, and shall remain so until such removal be made known to, and approved of and endorsed on the policy by the secretary or president of the company.

Several pleas were pleaded; but, on the trial, the defence was rested mainly on the allegations that the building which contained the property insured was occupied, at the time of the fire, for purposes considered hazardous: that alterations were made which tended to increase the risk, and not reported to the company; and that the fire was occasioned by alterations which materially increased the risk. A verdict having been rendered for the plaintiff, a rule was obtained, on behalf of the defendants, that he show cause why it should not be set aside, and a new trial ordered; and this rule having been argued, it is now moved to make it absolute.

The principal reasons relied on for a new trial were, that the judge erred in his charge to the jury, which was, in substance, that neither the proviso nor the sixth condition applied to personal property insured; and that he erred in that part of his charge where he instructed them that to defeat a recovery, the defendants should have satisfactorily shown that the fire originated in the hazardous use of the premises by the plaintiff without their authority. It was also assigned as error, that the judge admitted illegal evidence.

I think the judge was right in considering the sixth condition annexed to the policy as not applying to this case. That condition is, by its very terms, limited to alterations made in buildings insured by the company, and consequently can have no application to personal property.

But, in my opinion, he fell into an error in instructing the jury that the proviso must be limited in the same way. A contract of insurance, like every other contract, must be construed liberally, so as to accord with the intention of the parties. *Angell*, §§ 12, 96. The phrase "premises above mentioned" properly describes the building in

Robinson v. Insurance Co.

which the press was contained, for the only premises before mentioned was that building. When the press was removed to another building, and the removal was approved of and endorsed on the policy, the building into which it was removed became the "premises above mentioned," and the proviso then applied to it. This view of the case was evidently in the contemplation of both parties to the contract. The building in which the press was contained is described, not for the purpose merely of identifying the press, but for the purpose of ascertaining the hazard and determining the rate of insurance. The hazard of the building was, in fact, the real hazard incurred, there being little or no danger of the press being burned in any other way than in consequence of the burning of the building containing it. Upon the construction put on the contract at the trial, the proviso was rendered wholly nugatory, and the company was left without the protection both parties must have understood it was intended to secure.

It is true that there is some difficulty in ascertaining precisely what is meant by the phrase, " purposes considered hazardous," in this proviso, there being no classification of risks or premiums annexed to the policy, as is customary, and no such classification having been adopted by the company. But evidence was given that the defendants did not insure buildings of the character of that containing the press, connected as it was with the back building which adjoined, and was substantially a part of it, after the steam-engine, foundry, blacksmith shop, and cupola furnace were added in the year 1853. And although it appeared that the assured was charged the highest rate of premium ever taken by the company, it also appeared that this rate was far below the rates charged by other companies for such risks as this became after the alterations were made. Even if the proviso was struck out of the policy entirely, good faith required the assured, if he exposed the property to a risk far more hazardous than

could have been contemplated by the insurers, to notify them of the change, and give them the option of continuing or terminating the risk. *Angell,* § 162 ; *Stebbins* v. *Globe Ins. Co.,* 2 *Hall* 632. I think it can hardly be doubted that, had the change in the risk been made known to the company, they would not have agreed to continue the insurance. There was some contradiction in the evidence on the question whether the risk was materially increased ; but, in my opinion, taking the facts stated, and discarding the mere opinions of witnesses, which are so apt to lean for the unfortunate, and are entitled to but little consideration, they are too strong to leave it doubtful. It is, indeed, difficult to shut our eyes to the fact that the change of occupation changed the risk from one that was ordinarily regarded as hazardous, to one that was, by all insurance offices, considered as extra hazardous, if not of a special and extraordinary character. Some witnesses think, and so testified, that, if proper precautions are used, steam mills, cupolas, and foundries are not specially hazardous ; but the practice of all insurers and the common experience of life prove the contrary. In my opinion, the decided weight of evidence was, that the risk was so changed as to come within the proviso, and so that good faith and fair dealing required that the company should be notified, and permitted to choose whether they would continue to insure the property for the premium paid, or for any other premiums that might be agreed on. The omission, on the part of the assured, to give this notice, although it may have been, and I doubt not was a mere inadvertence, proceeding from no improper motive, was of such a character as may be properly treated as gross negligence, which ought to exonerate the company.

Had the question arising in this case in regard to the character of the alterations, and the degree of negligence that ought, in consequence, to be imputed to the plaintiff, been distinctly submitted to the jury, it might have been proper to acquiesce in their decision. But I am not satis-

Robinson v. Insurance Co.

fied that it was. The bearing of the charge was strongly for the plaintiff. In one part of it the judge says, "it clearly appears without contradiction that all the alterations made to the building would diminish, instead of increase the risk of its being burned." This remark, probably, was meant to be applied only to the brick building itself; but I find nothing to qualify it, and there is much reason to fear it may have unduly prejudiced the defence. As applied to the whole building, including the back building or wooden shed which was connected with it, and actually communicated the fire to it, the evidence, in my opinion, hardly warranted it. The charge, after a strong intimation that even if the jury was satisfied that the alterations in the main building tended to increase the risk, this would not vitiate the policy, because the parties, when making it, did not so stipulate, closes with the direction that " to defeat a recovery, the defendant should have satisfactorily shown to you that the fire originated in the hazardous use of the premises by the plaintiff without their authority or acquiescence."

How the fire originated was material, so far as it bore on the question of the change of risk, and of the prejudice thereby resulting to the defendants. But it was not necessary, to entitle them to a verdict, that they should show that it originated from the alterations. That it did in fact commence in that part of the building containing the new erections, was a fact proper to be submitted to the jury, to be weighed by them as evidence in regard to the increase of the risk. As the case appeared upon the evidence, I think the true question which ought to have been submitted to the jury was, does the evidence satisfy you that, at the time when the fire happened, the building containing the press, including therein the back building as a part of it, occupied for a purpose considered hazardous, that is to say, in a manner so materially hazardous compared with the hazard when it was originally removed there by consent of the company, as to make the risk of

a different character from that contemplated by the parties? Not being satisfied that this question has been fairly considered, I think it ought to be submitted to another jury.

Besides the reasons growing out of the judge's charge, it was insisted that an error was committed in permitting two of the witnesses to give evidence to show that although the new erections may have increased the risk, other changes diminished it, so that, upon the whole, the risk was no greater at the time of the fire than when the press was first removed. It does not very satisfactorily appear that evidence of this character was admitted, and the judge, in his charge, distinctly stated that this mode of viewing the case was not correct. I do not see that this objection is sustained.

Another reason for a new trial, insisted on, was, that evidence was admitted to prove that one Hulfish was an agent of the company for making surveys in Princeton, and frequently passed by after the alterations complained of were made, and might have seen them from the street. This was undoubtedly an error. It did not appear that Hulfish had any power to approve an increase of the risk, or that it was any part of his duty to inquire in regard to changes, or to notify the company. His seeing or not seeing the alterations made, was a fact wholly immaterial and irrelevant. The rule for a new trial must, for the reasons assigned, be made absolute, the costs to abide the event of the suit.

The CHIEF JUSTICE. I concur in thinking that a new trial should be granted. In addition to the reasons relied on by Justice Elmer, I think there was an error committed upon the trial touching the true interpretation of the contract of insurance. That contract is briefly as follows: "The sum of $400 is hereby insured unto John Robinson, for the term of ten years, upon the following described property: a new double Adams printing press, contained in a frame building in the rear of the printing office, in

a room sixteen by eighteen feet, (said press and its fixtures being valued at six hundred dollars—survey on file in this office) provided that if the *premises above mentioned* shall at any time when such fire shall happen be in whole or in part occupied for purposes considered hazardous, unless liberty so to occupy them be expressly stipulated for, this policy and every clause, article, and thing therein contained shall be void and of no effect. This proviso the jury were instructed clearly refers to *insured* premises, and not to premises containing personal property, which is the subject of the insurance. But is that the true meaning of the contract? A contract of insurance, like every other contract, is to be construed liberally and according to the intention of the parties. *Angell on Fire Ins.*, §§ 12, 96.

The term "premises," both in law and in common parlance, is used to indicate lands or buildings. The "premises above mentioned," in this policy, must either mean the printing press or the building in which the *press* was. No other premises had been mentioned. The parties could scarcely have intended to covenant that a printing press should not be occupied in whole or in part, for purposes considered hazardous. The "premises above mentioned" must then refer to the building in which the press was. The clause will then read, "provided that if the building above mentioned," or "the building in which the said press is," shall, at any time when such fire shall happen, be, in whole or in part, occupied for purposes considered hazardous, unless liberty so to occupy them be expressly stipulated for, this policy, and everything therein contained, shall be void and of no effect.

It can scarcely be contended that that is not a reasonable and fair contract for the parties to enter into. In most cases, the hazards of insuring personal property must depend, in a great degree, upon the building in which the insured property is, and upon the uses to which the building is applied. Increasing the hazard of the build-

ing increases the risk of insurance upon property within the building. This view was clearly within the contemplation of both parties to this contract. They describe the building in which the press is, not for the purpose of identifying the press, but for the purpose of ascertaining the hazard and determining the rate of insurance. When the press is removed to another building, the consent of the insurers to the removal is obtained, and endorsed upon the policy. The hazard of the building in which the insured property was located was an essential element of the contract. This cause was in fact tried upon the assumption that the hazardous purposes for which the building was used increased the risks of insurance, and thereby affected the liability of the insurers. Against that increase of risk, the insurers had a clear right to guard by their contract. They have done so, by the terms of their policy, in the most explicit language. Upon what principle is that clause to be stricken out of the contract? It is obvious that, upon the construction put upon the contract at the trial, the proviso is effectually erased from the policy. It has no meaning whatever. But the well-settled rule of law is, that in interpreting contracts, effect must, if possible, be given to every clause.

If this insurance had been upon the building alone, it is not questioned but that the proviso would have been operative, and the policy would have been avoided by the use of the building for purposes extra-hazardous. If the insurance had covered both the building and the press within it, still the proviso would be operative; and if the policy be avoided as to the building, it must be avoided, also, as to the property within it; because, by the express terms of the contract, "the policy, and every clause, article, and thing therein contained, shall" *thereupon* "be void and of no effect." It is difficult to assign any good reason why the proviso is not equally operative when the insurance is upon the personal property alone.

The construction given to the sixth article of the deed

of settlement, annexed to the policy, was clearly correct. That clause is, by its very terms, limited to alterations mad in buildings insured by the company, and can, consequently have no application, except when the insurance is upon buildings. But there is no such limitation in the proviso contained in the policy, and its true meaning was mistaken upon the trial.

It is worthy of notice that the defendants, by their seventh and eighth pleas, plead the violation of the contract contained in the proviso, in bar of the action. The plaintiff does not demur, and thereby deny the validity of the contract, or its application to the plaintiff's cause of action, but takes issue upon the question of fact, whether the premises mentioned in the policy were occupied for purposes considered hazardous; and these issues of fact are by the jury found for the plaintiff.

Justices HAINES and VREDENBURGH concurred.