GOLDMAN et al. v. PIEDMONT FIRE INS. CO. et al.

No. 10704.

United States Court of Appeals Third Circuit.

Argued June 17, 1952.

Filed Sept. 5, 1952.

'As Amended Sept. 24, 1952.

Rehearing Denied Sept. 30, 1952.

McLaughlin, Circuit Judge, dissented.

David Stoffer, Newark, N. J. (Stoffer & Jacobs, Newark, N. J., Joseph M. Jacobs, Newark, N. J., on the brief), for appellant.

James L. Handford, Newark, N. J. (Harold D. Feuerstein, Newark, N. J., on the brief), for appellee National Liberty Ins. Co.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an action by the plaintiff against four defendant insurance companies to recover on four fire insurance policies, one issued by each defendant, covering the plaintiff's stock of electric fans and parts stored in a building at 47–49 Albion Avenue, Paterson, New Jersey, which was destroyed by fire on March 19, 1948. The action was originally brought in the Superior Court of New Jersey and was removed by the defendants to the United States District Court where, after a trial, the jury rendered a verdict in favor of the defendants. From the judgment rendered on the verdict the plaintiff has appealed.

The plaintiff, who dealt in electric fans under the trade name Kingaire Manufacturing Company, rented the one-story building at 47–49 Albion Avenue, for the purpose of storing fans and parts. The building had been used as a moving picture theatre and as a pool room and, immediately prior to his occupancy, as a warehouse. He requested fire insurance from Jacob Prince, Jr., agent of the defendants, to cover merchandise valued at $75,000. Prince inspected the building, found it empty except for a pool table in the center of the floor, and on October 21, 1947 issued the four insurance policies for $15,000 each upon which this suit was subsequently brought. Plaintiff then stored a stock of fans and parts in the building

During the subsequent winter there were heavy snow falls and sleet storms in Paterson and on February 14, 1948 a portion of the roof of the building in which plaintiff's fans were stored collapsed. According to the defendants' witnesses the big center skylight fell in, together with the central section of the roof, causing the side walls to bulge and break away from each other at the corners and leave cracks and openings through which a person could enter the building. In addition the panes in the back window were so broken that the build-

ing could be entered there also. Later the same day the plaintiff went to the building, having heard that something had happened there. He testified that he went inside and saw some snow on the pool table. He then looked up and saw some of the skylight fallen in but says he saw nothing wrong with the roof or walls of the building. He immediately telephoned Prince, the defendants' agent, told him what he had observed and said that it would not damage the goods. Prince then told him he need do nothing about it and he left immediately for Florida and did not revisit the building until after the fire. Prince drove past the building about once a week thereafter but testified that he observed nothing unusual about the building.

On March 19, 1948 a fire broke out which destroyed the building and very seriously damaged the plaintiff's merchandise, the salvage value remaining being not more than $7,000. It was to recover for the loss thus suffered that the present suit was brought. As an affirmative defense the defendants asserted that they were relieved from liability by virtue of the following provision in each policy:

> "Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; * * *."

Their contention was that the hazard had been increased by the collapse on February 14, 1948 of the building in which the insured merchandise was stored, that this was known to the plaintiff and its correction was within his control and that accordingly they were not liable, by virtue of this "increase of hazard" clause, since the extra hazardous condition had not been corrected by the plaintiff at the time of the fire.

At the close of the testimony the plaintiff moved to eliminate the foregoing affirmative defense from the consideration of the jury. The trial judge denied the motion and submitted that defense to the jury along with the other issues in the case. By its verdict in favor of the defendants the jury resolved in their favor the questions of fact upon which the affirmative defense rested, namely that the building in which the plaintiff's goods were stored was seriously damaged by the collapse of a portion of the roof on February 14, 1948 as testified by the defendants' witnesses, and that this damage increased the hazard of fire to the knowledge of the plaintiff and that its correction was within his control.

Upon this appeal the plaintiff makes a number of contentions.[1] The first is that the trial judge erred in refusing to grant plaintiff's motion to eliminate from the consideration of the jury the affirmative defense based on the alleged violation of the "increase of hazard" clause of the policies in suit. This contention is primarily based upon his assertion that the "increase of hazard" clause does not avoid a fire insurance policy where the risk has been increased by accidental means as in this case.

Preliminarily we observe that "In most cases, the hazards of insuring personal property must depend, in a great degree, upon the building in which the insured property is, and upon the uses to which the building is applied. Increasing the hazard of the building increases the risk of insurance upon property within the building."[2] The hazard referred to in the "increase of hazard" clause is, of course, the hazard of fire, not of some other casualty. We think that the defendants' evidence in this case was sufficient to justify a finding by the jury that the risk of fire was increased by the collapse of February 14th. Certainly the open and collapsed condition of the building invited the entrance of children and vagrants with a consequent increase in the risk of fires being started therein. Moreover the open condition of the building itself increased the hazard by making it susceptible to increased drafts.

---

1. This diversity case arose in New Jersey and all its contacts are with that state. The law of New Jersey is accordingly controlling.

2. Chief Justice Green in Robinson v. Mercer County Mutual Fire Insurance Co., 1858, 27 N.J.L. 134, 141–142.

■ The question remains, however, whether the accidental collapse of the building was within the contemplation of the "increase of hazard" clause. In determining this question it must be borne in mind that the clause is not a forfeiture clause. It does not avoid the policy but merely suspends the insurance while the increased hazard remains unabated by the insured. For this reason and also because its inclusion and exact language are dictated by New Jersey law [3] the clause is not to be construed strictly against the insurer but is to be enforced as written.[4]

■ The plaintiff argues that the "increase of hazard" clause applies only to conditions created by act or instrumentality of the insured and not to those accidentally occurring as in this case. We do not think that the law of New Jersey so limits the operation of the clause. It is true, as the plaintiff points out, that most of the decided cases have involved increased risks which were the result of acts or neglect of the insured. But we think that an increased hazard not brought about by the insured is also within the scope of the clause to the extent that the insured knows of the increased hazard and is in a position to abate it but fails to do so. In the case of Westchester Fire Ins. Co. v. Fitzpatrick, 3 Cir., 1924, 2 F.2d 651, 654, which came up from the District Court for New Jersey, this court held that the condemnation by the public authorities of an old building followed by notice to the tenants to vacate it constituted an increase of hazard within the meaning of the "increase of hazard" clause. We think that this ruling correctly stated the law of New Jersey and is applicable here.

■ It is of course true, as we have already indicated, that if the hazard has not been increased by act or neglect of the insured it must appear that he had knowledge of it and that the means of abating it were within his control. But if such knowledge appears and the insured does not promptly take the steps open to him to abate the hazard, the insurance remains suspended until he does so. Here it is obvious that the plaintiff could have either repaired the building or induced his landlord to do so or he could have removed the insured merchandise to a safer place of storage. The trial judge, therefore, did not err in refusing to withdraw from the jury's consideration the substantive defense based on the alleged violation of the "increase of hazard" clause.

■ The plaintiff next contends that the trial judge erred in his instructions to the jury with respect to the defense of increase of hazard. He first objects to the trial judge's statement to the jury: "As far as the control is concerned, I understand the plaintiff raises no question that while he was but a tenant, he could, by pressure on the landlord, have controlled the situation." The objection is that the plaintiff's counsel had not so stipulated. But when the existence of this stipulation was questioned at the close of the charge and the trial judge offered to reopen the case in order that the parties might present evidence on the question of control counsel for the plaintiff did not accept the judge's offer but finally said: "I will take it as your Honor remembers it." At that time counsel also said, "I had no objection, and I still don't, to the Jury being told that if it were within the plaintiff's knowledge or control, to use the words of the policy, and then whatever effect that would have on the case, that would be it." [5] In the light of this statement the plaintiff cannot now be heard to assert, as he does, that the trial judge erred in failing to charge the jury that the increase of hazard must be within the plaintiff's knowledge *and* control. The plaintiff's final contention with respect to the charge

3. N.J.S.A. 17:36-5.7.

4. Mick v. Corporation of Royal Exchange, &c. 1914, 87 N.J.L. 607, 611, 91 A. 102, 103, 52 L.R.A.,N.S., 1074; Flint Frozen Foods, Inc. v. Firemen's Ins. Co. of Newark, 1952, 8 N.J. 606, 610, 86 A.2d 673, 674.

5. These statements by Samuel Doan, then counsel for the plaintiffs appear in the transcript of the trial proceedings at pages 490, 491 and 492.

is that the trial judge unduly restricted the jury in its function of determining whether there was in fact an increase of hazard. We have examined the charge with care and we find no merit whatever in this contention. On the contrary we are entirely satisfied that the trial judge fairly submitted this question to the jury. We conclude that the plaintiff's objections to the charge of the court are all without merit.

The plaintiff's final contention upon this appeal is that the trial judge erroneously admitted the testimony of Lloyd A. Sloan, a witness for the defendants. Sloan was State Agent for one of the defendant companies with the duty of passing upon the acceptability of risks offered to his company for insurance. A question was put to him in which, after the seriously damaged condition of the building as testified to by defendants' witnesses was described, he was asked what he would have done in regard to the policy of Piedmont Fire Insurance Company if he had known these things had happened. After an objection to the question was overruled by the trial judge he answered "We would have asked that the policy be cancelled because the hazard had been increased." The objection to this testimony was that it involved the opinion of the witness upon the very issue which was being submitted to the jury, namely, whether the damage to the building resulted in an increase in the hazard of fire. The trial judge held the testimony inadmissible for this purpose but admitted it for the purpose of rebutting a possible inference that the defendants had waived the operation of the "increase of hazard" clause.

We do not think that the evidence was admissible on the question of waiver. There was no evidence that the defendants had waived the "increase of hazard" clause and the trial judge did not charge the jury on that subject. But even if the question were regarded as inferentially in issue we do not think that opinion evidence by a company agent that the company would have requested the cancellation of its policy if informed of the collapse of the building in which the insured goods were stored would have been admissible. For the "increase of hazard" clause operates automatically to suspend the insurance while the increased hazard continues. Its operation is, therefore, not dependent on the cancellation of the policy by the insurance company. Moreover the question would have been whether the company, through its agent Prince, in fact waived the operation of the clause, not what the company, through its agent Sloan, might have done if the latter had been informed of the condition by Prince or had otherwise learned of it.

We think, however, that the evidence was admissible on the question, which was submitted to the jury, whether the condition of the building as testified to by the defendants' witnesses did in fact constitute an increase of the hazard of fire. There is undoubtedly a conflict of authority as to whether an insurance expert may testify to his opinion as to the materiality of a particular representation or a particular increase of risk. The rule in a majority of jurisdictions is that such opinion evidence is inadmissible.[6] We need not discuss the pros and cons of this legal controversy, however. For since this case was tried in the District of New Jersey the evidence was admissible, under Civil Procedure Rule 43(a), 28 U.S.C., if it was admissible under the law of New Jersey. It appears that it was admissible under the law of that state. In Schenck v. Mercer County Mutual Fire Insurance Company, 1854, 24 N.J.L. 447, the court permitted an expert to testify to his opinion that a certain addition to a building had not increased the risk. The expert in that case was a fireman but the Supreme Court of New Jersey analogized his case to that of an insurance company officer, saying at page 451 of 24 N.J.L.:

"If the secretary of a fire insurance company, accustomed to examine build-

---

6. See 7 Wigmore on Evidence § 1946. See also discussion of this subject by Judge Taft in Penn Mut. Life Ins. Co. v.

Mechanics' Savings Bank & Trust Co., 6 Cir., 1896, 72 F. 413, 423–430, 38 L.R.A. 33.

ings with reference to the insurance of them, is competent as an expert to testify as to what will increase the risk, a man who for a long course of years has been dealing practically with the risks themselves, it would seem is equally entitled to be relied on to express an opinion on such a subject."

We are referred to no later case in New Jersey which departs from the rule applied in the Schenck case. If that rule of evidence is so out of line with the weight of authority that it should no longer be followed in New Jersey it is for the Supreme Court of that state, and not for us, so to declare. We conclude that it was not error to admit the opinion of the witness Sloan in evidence.

The judgment of the district court will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

This action should be sent back for a new trial because of the serious results which arose from a misunderstanding as to what had occurred at an unrecorded trial conference between the court and counsel. The situation was not cured, as the majority opinion contends, by plaintiff's attorney saying, "I will take it as your Honor remembers it." That statement followed and was intimately connected with the attorney's request that the court charge " * * that this is the clause and that the burden is upon the defendants to prove it by the preponderance of the evidence." The judge, answering that request, said, "I can tell them that." What he said to the jury was, "In the next place, when it comes to a person who sets up specific defenses against paying that money, that same burden by the greater weight of the evidence rests upon that individual in establishing that particular defense." The difficulty with this generality was that the court had already eliminated the necessity of establishing that part of the increased hazard defense dealing with control by the insured when he earlier charged that "As far as the control is concerned, I understand the plaintiff raises no question that while he

was but a tenant, he could, by pressure on the landlord, have controlled the situation." It was over this part of the charge that the dispute arose as to what had been agreed. Plaintiff's attorney earnestly urged that he had not acknowledged that the defense need not prove control by plaintiff. Unquestionably he assumed, when the judge accepted his above referred to suggestion, that the matter would be straightened out to his satisfaction by the court again reading the increased hazard clause and advising the jury that the defendant must " * * * prove it by the preponderance of the evidence." The language which the court employed had no such consequence. It did not eradicate the prior instruction that control under the policy clause was admitted to have been in the plaintiff. The statement of plaintiff's attorney was predicated on anticipated corrective (from his point of view) language to be added to the charge and directed specifically to the necessity of the defense properly establishing the increase of hazard defense. When it was not charged he should have objected further but his failure to do so is no indication that at that time, as the case was going to the jury, he was changing his entire trial theory and admitting control in the plaintiff.

Quite aside from the above, and assuming that the recollection of the trial judge regarding the conference conclusion was correct, there is another substantial ground for reversing this judgment. The court charged the jury that whether the hazard had been increased was a factual problem for their decision. After that he said that the increase of hazard " * * * must have been of a character which put it within the control or knowledge of the insured." He followed this with the sentence quoted in the majority opinion in which he said in effect that plaintiff having admitted control that question was out of the case. Then he charged on the question of knowledge. He concluded his remarks on that subject by saying, "So here, you see, comes in a further question of fact for you to decide. Did the plaintiff know of such a condition or must that knowledge have been

imputed to him as a reasonable man?" Immediately thereafter he said:

"If you find, therefore, that the hazard was increased, as a matter of fact, that it was increased within *either* plaintiff's control *or* knowledge, then the policy is avoided and plaintiff cannot recover thereon because the companies *would be asked to insure something* which was not at all the animal which they originally agreed to insure." (Emphasis supplied).

Since the jury had already been told that control by the plaintiff was conceded the result of the above instruction for all practical purposes was to direct a verdict in favor of the defendant companies and against the plaintiff in the event the jury found the hazard to have been increased. In so doing the trial judge construed the increased hazard clause disjunctively—the way it is worded. Plaintiff's attorney himself was of no help to the court in arriving at the proper interpretation of the phrase "control or knowledge" when he told the judge as is set out in the majority opinion that he had no objection to the court charging the language of the policy clause. Apparently neither at that time nor on any other occasion in the course of the trial did he or counsel for the defendants make an attempt to advise the court of the real meaning of the clause.

That the increase of the fire hazard under the policy clause must not only have been within the control of the insured but to his knowledge is flatly stated in the majority opinion.[6] It is just as clearly admitted in appellees' brief. The governing New Jersey law and the overwhelming majority of reported cases categorically support the principle. Hodge v. Travelers Fire Ins. Co., 16 N.J.Super. 258, 263, 84 A.2d 552; Krieg v. Phoenix Ins. Co., Ct.E. & A., 116 N.J.L. 467, 474, 185 A. 21; St. Paul Fire & Marine Ins. Co. v. Bachmann, 285 U.S. 112, 116, 52 S.Ct. 270, 76 L.Ed. 648; Patriotic Ins. Co. v. Franciscus, 8 Cir., 55 F.2d 844, 847; Royal Exchange Assurance of London v. Thrower, D.C.Ga., 240 F. 811, 814, affirmed, 5 Cir., 246 F. 768, 772; North British Mercantile Ins. Co. v. Union Stock Yard Co., Ky.Ct.App., 120 Ky. 465, 87 S.W. 285, 287; Commercial Union Fire Ins. Co. v. Capouano, 55 Ga.App. 566, 190 S.E. 815, 816, affirmed, Ga.Sup.Ct., 185 Ga. 303, 194 S.E. 521; Schaffer v. Hampton Farmers' Mutual Fire Ins. Co., 183 Minn. 101, 235 N.W. 618; Smith v. Penn Township Mutual Fire Ass'n, 323 Pa. 93, 99, 186 A. 130; Bitonti v. National Liberty Ins. Co., 96 Pa.Super. 521.

It follows that the judge in his charge should have instructed the jury that, in addition to what he stated to be admitted control, defendants must also prove knowledge of the increased hazard in the plaintiff-insured in order for the jury to decide against the plaintiff if they found that the hazard had been increased. What the court had said earlier in the charge as to "knowledge" was at best confusing and inadequate in view of the later instruction that it was merely necessary to find *either* knowledge *or* control.

Despite the able and conscientious effort of the district judge to have this difficult case disposed of fully and fairly, plaintiff has been inadvertently deprived of his day in court. He was entitled to that as a matter of right. He did not forfeit that right. He should be allowed a new trial on the merits of his cause of action.

---

6. The majority opinion also holds that the jury verdict, among other things, means " * * * that this damage increased the hazard of fire to the knowledge of the plaintiff and that its correction was within his control." Unfortunately that conclusion is erroneous as has been demonstrated. The jury was not told that they must find knowledge *and* control but that a finding of either of those elements, coupled with a holding that the hazard had been increased, defeated the plaintiff's claim.