# Diehl *versus* The Adams County Mutual Insurance Company.

1. The insured in a mutual insurance company is a member: the books of the company are as much his as other members, and are evidence against him.

2. An insured declared for a loss; the company pleaded that he had altered the buildings, which he traversed by his replication. *Held*, that under the pleadings evidence of waiver by the company was inadmissible.

3. That an alteration was made in buildings insured by a tenant without the knowledge or authority of the assured, was no excuse for a violation of his covenant against alteration.

4. By a stipulation in an insurance, whenever alterations should be made application might be made to an officer of the company, "who shall examine the premises, and if the hazard be increased the premium shall be increased; if the risk was not increased, the officer should give a certificate 'altered but not endangered.'" *Held*, in an action for a loss by fire, that without proof of such examination and certificate, evidence that an alteration did not increase the risk was inadmissible.

5. A policy on a tannery without steam was accepted under the terms specified in the company's by-laws, which contained the classes and rates of risks. One of the classes was "Tanneries without Steam." Steam-power was attached to the tannery, and it was afterwards burned. Evidence that

[Diehl *v.* Adams Co. Mutual Ins. Co.]

this did not increase the risk, and that the fire did not arise from the steam-works, was inadmissible.

6. After a policy had been forfeited by alterations in violation of the by-laws, the company passed a resolution directing an assessment on all policies "in force at this date;" the treasurer assessed the forfeited policy, and the assured paid the assessment. *Held*, not a waiver of the forfeiture.

7. A waiver never occurs unless intended, or where the act relied on ought in equity to estop the party from denying it.

8. If the company had called for an assessment whilst steam was being used, and with a knowledge of the use, they would have been estopped from setting it up.

9. After a policy has been forfeited, it cannot be renewed but by express agreement.

10. It is not error to refuse an amendment which would not aid the party's case.

11. A replication inconsistent with one already filed is double, and is not an amendment of form.

12. Such replication is not demandable of right under the Act of March 21st 1806, which extends only to the declaration or plea.

13. Amendments beyond the plea are as at common law, and to be tested by a legal discretion.

May 8th 1868.     Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Adams county :* To May Term, 1868.   No. 41.

This was an action of covenant, commenced February 3d 1865, by Peter Diehl against the Adams County Mutual Fire Insurance Company.

The declaration was on a policy dated June 3d 1863, by which in consideration of $6.50 and a premium note for $130, for the payment of assessments to meet losses by fire, the plaintiff was insured for $1935 on a frame tanning-house, log beam-house and machinery, two frame bark-sheds, bark-mill, wagon-house and some personal property, for five years. The declaration set out amongst other conditions of insurance contained in the policy, that if the premises should be altered or used for any other business, &c., which according to the by-laws, conditions and rates or class of hazard annexed to the policy would increase the hazard, unless by consent of the company added to the policy, during the time the premises should be so used the policy should be of no effect and that the policy was accepted subject to the by-laws and conditions which were to be resorted to for ascertaining the rights and obligations of the parties : the declaration then averred that the buildings were on the 13th of August 1864, burned so that the plaintiff sustained a loss of $1075 ; that he gave notice, &c.   He further averred that on the 19th of September 1864, the managers made an assessment of $3.90 on the plaintiff's policy, which on notice he paid on the 25th of November 1864 ; he then averred that he had fulfilled all his stipulations, but the company had not paid the loss, &c.

[Diehl v. Adams Co. Mutual Ins. Co.]

The defendants pleaded that in violation of the conditions contained in the policy and the rules and by-laws annexed to it, the plaintiff set up and used in connection with his tannery and bark-mill on the premises described in his application, and in close proximity to the buildings, a steam-engine, which was used in connection with the other machinery until the time they were burned, by which the risk was increased, without the consent of the company, and the said policy became invalid, &c.

The plaintiff replied that he did not make any of the erections upon the premises described in his application and policy in violation of its terms and conditions, *modo et formâ*. The case being at issue on these pleadings was tried January 20th 1868, before Fisher, P. J.

The plaintiff gave in evidence his application and policy for the property mentioned in his declaration; also extracts from the by-laws, showing the classes and rates, amongst which are " tanneries without steam, 8 per cent."

" The above rates are for insurance of the *safest* kinds. In all cases where the buildings are old and dilapidated, or if for any other reason the hazard may be increased, the premium must be increased accordingly. Such classes as are not named may be insured at such rates as the board of managers or executive committee may determine.   *   *   *   Whenever any alterations shall be made to any building insured, application may be made to the secretary or manager, who shall examine the premises and certify his opinion whether the hazard be thereby increased or not; and if not increased, the secretary shall enter upon the record of said policy, ' altered but not endangered,' and give to the insured a certificate thereof. But in case the secretary or agent shall judge that such alterations or additions do increase the risk, he shall say how much, and take an additional note for such increase," &c.

Whenever an assessment shall have been made upon the premium notes, and the sum determined which each person shall pay on his note, if such sum shall not be paid within *thirty* days after the same shall have been demanded in behalf of the company, the managers may, at their option, annul the policy of insurance given upon such note, and retain said note and collect thereon such sums so assessed. The fire and loss to the amount of $1075 were admitted, and also that the proper preliminary notice and proofs had been given.

The plaintiff then rested.

The defendants gave evidence that a steam-engine had been put up at the gable end of the plaintiff's beam-house, the boiler, furnace and stock were alongside the beam-house, but outside on an alley; these works were there at the time of the fire; the alley was a public alley; the shop ran into the alley a foot or two, and

the furnace and stack were still further out; the furnace was in operation before the fire.

The defendants called a witness who was a member and manager of the company; he was objected to as interested, but admitted, as being rendered competent by Act of April 12th 1852, Pamph. L. 328, relating to the Bradford County Insurance Company, extended to the defendants,—and a bill of exceptions sealed.

The defendants offered in evidence their minutes, to show the action of the managers on the plaintiff's claim, to be followed by proof that the final action was communicated to the plaintiff; it was objected to, admitted, and a bill of exceptions sealed.

The defendants here rested.

The plaintiff then called a witness and offered to prove by him that he " was employed by Jeremiah Diehl, the tenant of the premises insured, some time in May 1864, to put up the steam-engine and boiler, &c.; that he did erect the same in pursuance of said contract, that he was paid for his work by Jeremiah Diehl, directed in the execution of the same by him, and he knew no one else but him in the contract. *That the furnace, smoke-stack and boiler were not on the premises on which the insured property was situated, but outside on an open and public alley.* The said boiler, furnace and stack were so situated and constructed as not to add to the risk of the insured premises in its use for the purpose for which it was erected. That said erection was not the cause of the fire, but that the fire originated on other premises not covered by the policy in suit, and was communicated to the buildings insured." The offer was objected to; the court admitted the part in italics, rejected the remainder, and sealed a bill of exceptions.

Plaintiff then gave evidence showing that the boiler, smoke-stack and furnace were in the alley, and that the alley is a public alley.

He then offered to prove by the tenant of the premises that he erected the engine, &c., without authority from the landlord or derived from the terms of the lease; that he paid for them, and that " before the engine had commenced running, a manager and agent of the company called in the absence of the plaintiff to examine the premises in relation to the increased hazard by the proposed erection, and to value the increased risk, and was informed by witness that anything additional, he (witness) would pay and comply with the demands of the company forthwith, but that said agent said that it would do at another time; that there was no hurry, that he would attend to it, but never did. The agent upon that occasion represented that he came to make the examination at the instance and request of the plaintiff and the secretary of the company. That two of the board of managers, the second of whom took the application of plaintiff for insurance

[Diehl *v.* Adams Co. Mutual Ins. Co.]

in suit, and both living near the *locus in quo* well knew of the erection of the said engine and boiler all the time while the same was being erected, and that neither of them nor the agent above named, at any time, nor did any one on behalf of the company, make any objections to said erections.

The offer was objected to, rejected, and a bill of exceptions sealed.

The plaintiffs called the treasurer of the company, who testified that he made a book of assessments in consequence of directions given him by the company, under a resolution September 19th 1864, to lay an assessment on notes in force at that date, to meet losses, &c.

The plaintiff then offered the book of assessments, showing that amongst others he had been assessed $3.90 on his premium note, to be followed by proof of notice to persons assessed to pay the assessment, and that he paid it on the 25th of November 1864.

The offer was objected to, rejected, and a bill of exceptions sealed.

The plaintiff asked leave to file an additional replication : that the defendants on the 19th day of September 1864 resolved to levy an assessment on the premium notes of the company of 3 per cent., to pay losses, and in accordance with said resolution the executive committee, through the treasurer, laid an assessment on the premium note of the policy in suit, and said defendants gave notice through the newspapers of the county of Adams for the payment of the same to the treasurer, December 1st 1864, and the treasurer collected said assessment, to wit, $3.90 from plaintiff on the policy in suit November 25th 1864.

The court refused the amendment, because it would make the replication double, and a bill of exceptions was sealed.

The plaintiff requested the court to charge :—

" That the defendants not having averred or proved that the risk to the insured premises was increased by the addition and alteration in his plea alleged, the plaintiff is entitled to a verdict notwithstanding the alteration. The law being that an alteration without increase of hazard, does not vitiate, annul, or affect the contract. The jury cannot infer, without proof, that it does so increase it, nor is it matter of law to be ruled by the court."

The court refused to answer this point in the affirmative, but instructed the jury that the change proved by the witnesses to have been made, and not denied by the plaintiff, did vitiate the policy, whether the risk was increased or not.

The jury found for the defendants.

The plaintiff took a writ of error and assigned for error :—

1 and 2.　Admitting the defendants' offers.

3, 4 and 5.　Rejecting the plaintiff's offers.

[Diehl *v.* Adams Co. Mutual Ins. Co.]

, 6. Refusing to allow the defendants to amend their replication.
7 and 8. The instructions to the jury.

*D. Wills* and *D. Smyser*, for the plaintiff in error.—The examination and declaration by the agent was authority to go on with the alterations: Perry County Insurance Company *v.* Stewart, 7 Harris 48; Girard Fire Insurance Company *v.* Stephenson, 1 Wright 298; Paley on Agency 145, 215; Loudon Saving Fund *v.* Hagerstown Saving Bank, 12 Casey 498; Seiple *v.* Irwin, 6 Casey 513. The act of a corporation when doubtful is to be taken most strongly against it: Stacey *v.* Insurance Company, 2 W. & S. 544; Franklin Fire Insurance Company *v.* Updegraff, 7 Wright 350; Western Insurance Company *v.* Cropper, 8 Casey 351.

The evidence of the acts of treasurer should have been permitted to go to the jury on the question of waiver : Lycoming Insurance Company *v.* Stocklomn, 3 Grant 207; Garrett *v.* Gonter, 6 Wright 143; Franklin Fire Insurance Company *v.* Updegraff, 7 Id. 350; Lycoming Insurance Company *v.* Schollenberger, 8 Id. 259; Coursin *v.* Penna. Insurance Company, 10 Id. 323, 330; Buckley *v.* Garrett, 11 Id. 204, 211; Lycoming Insurance Company *v.* Mitchell, 12 Id. 368; Boyd *v.* McNaughton, 1 P. F. Smith 225; Frost *v.* Saratoga Mutual Insurance Company, 5 Denio 154; Carroll *v.* Charter Oak Insurance Company, 38 Barbour 402; Vial *v.* Genesee Mutual Insurance Company, 19 Id. 440; Inland Ins. and D. Company *v.* Stauffer, 9 Casey 397; Bateman on Commonwealth Law, § 1141.

The amendment of the replication was, at most, a cumulative traverse: Robinson *v.* Raley, 1 Burr. 316; Stephen on Pleading 262.

The question in the plaintiff's point was for the jury: Grant *v.* Howard Insurance Company, 5 Hill 10; Bateman on Commercial Law, sect. 1139, note. A warrant is to be construed according to its ordinary meaning: Shaw *v.* Robberds, 6 Ad. & Ell. 75; Stetson *v.* Insurance Company, 4 Mass. 330; Cumberland Valley Mutual Prot. Company *v.* Schell, 5 Casey 31.

*R. G. McCreary*, for defendants in error.—The minute book was evidence, the plaintiff being a member of the company: Com. *v.* Woelpper, 3 S. & R. 29; Fleming *v.* Wallace, 2 Yeates 120. The land in the alley belonged to Diehl, although used by the public, and he could have prevented the erection: Chambers *v.* Furry, 1 Yeates 167; Lewis *v.* Jones, 1 Barr 336; Sanderson *v.* Haverstick, 8 Id. 294. The authority of the agent was limited by the instrument to which the plaintiff was a party, and he was bound to know its extent: Mitchell *v.* Lycoming Insurance Company, 1 P. F. Smith, 402. Only the material allegations of the

[Diehl v. Adams Co. Mutual Ins. Co.]

plea were put in issue by the replication: 1 Chitty's Pleading 436, 611.

The opinion of the court was delivered, July 2d 1868, by

THOMPSON, C. J.—1. The answer of the defendant to the first assignment of error in this case is very complete, viz: that its act of incorporation, by adopting the 8th section of the Act incorporating the Bradford County Insurance Company, Pamph. L. 1838, p. 365, rendered its members competent witnesses for the company, when not individually interested. The objection that the witnesses were managers did not alter the case. They are managers because members, and it is only as members in this case, that they could be supposed to have any interest. No conduct of theirs as managers is involved in any issue in the case. By the act of incorporation they were clearly witnesses, therefore, in a case of this kind. Had there been any question of negligence, or recklessness on part of the managers involved, the objection might have been effectual—but that was not the case. The result under the pleadings could only affect the company.

2. The second assignment was equally well answered. The plaintiff below became a member of the company by the act of being insured in it. It was a mutual insurance company. The books were, therefore, in law, as much his as they were the books and minutes of the other members constituting the company: 3 S. & R. 29; 4 Barr 185; 1 P. F. Smith 402. This error is not sustained.

3. The third assignment of error is to the rejection of an offer to prove that the tannery, the principal subject of insurance, consisting of several buildings, had been leased before the erection and application of steam to its operations, and that the furnace and boilers to propel the engine were erected on a public alley, and were so constructed and situated, as not to increase the risk to the insured premises, and that the erection was in no wise the cause of the fire, but that it originated in, and was communicated from property not covered by the policy.

The court admitted that portion of the offer to show that the location of the furnace, boilers, and engine, were on the alley, but rejected the balance, deeming it inadmissible under the pleadings.

That the erection was by a tenant was no excuse if it was violative of any covenants in the policy. The possession was that of the insured, if it was by his tenant. The lessor, the plaintiff in this case, continued to be the insured party, and the covenants which he entered into in becoming insured remained, whether he occupied personally or by tenant. We need not spend time on this.

The defendant went to trial on a single plea, which averred that in violation of the terms and conditions of the policy, the

8 P. F. SMITH—29

[*Diehl v. Adams Co. Mutual Ins. Co.*]

plaintiff had erected and set up a steam-engine to be used, and used the same in operating his tannery, up to the date of the injury to the establishment by fire, and by this means changed the property into a class of risks not covered by the policy. The replication of the plaintiff, was a simple traverse of the fact averred. The rule that the *allegata* and *probata* must agree, contains the principle which justified the rejection of the proposed testimony. It did not in any manner sustain the plaintiff's allegation, that no such erection had been made as averred in the plea.

The plaintiff contends that it was evidence to show that the erection did not increase the risk, and therefore ought not to avoid the policy. The answer to this is, that the contract of insurance accepted by the plaintiff, stands upon the condition that if the insured premises " shall be so altered, or be appropriated, applied or used, to or for the purpose of carrying on, or exercising therein, any trade, business or vocation, which, according to the by-laws and conditions, class or hazard, or rates hereunto annexed, would increase the hazard, unless it be by consent, and agreement in writing, endorsed upon the policy," the policy shall cease and be void.

In the by-laws we find a list of rates of insurance for the classes therein enumerated, and in it are " *Tanneries without steam*, 8 *per cent.*" Tanneries with steam are not in the list. " The above rates," say the by-laws, " are for insurance of the *safest* kind." And " such classes as are not named *may be insured* at such rates as the board of managers or executive committee may determine." The safest risks are the classes named and declared in the policy as enumerated. Other risks may be insured by the special action of the managers or executive committee, at such rates as they may determine upon. That is the meaning of these clauses undoubtedly.

The plaintiff's tannery and other property, are insured according to the class and rates set down in the by-laws, and the policy was, by express stipulation, "made and accepted subject to, and in reference to the terms, by-laws and conditions therein contained and thereunto annexed." The application of steam to the tannery changed and put the property out of the class and rates enumerated, and in which it was insured. Steam-tanneries are not on the list, while tanneries *without steam* are. The list was a mode of fixing what should be regarded as an increase of hazard. It is declared, if the property insured should be so changed or used as, according to the by-laws and conditions, class or hazard, of rates " hereunto annexed," the hazard would be increased and unless by consent, the policy should be avoided. On the face of the policy and by-laws made a part of it, a steam-tannery was not insured and not insurable at the rates mentioned. The offer,

[Diehl *v.* Adams Co. Mutual Ins. Co.]

therefore, to prove as proposed, was an offer to ignore what the parties had agreed upon as the test of increased hazard, and was properly rejected. There are cases in which such offers have been made and the testimony admitted, but I find none in which the conditions and by-laws in regard to the risks are the same as here. The cases of Perry County Ins. Co. *v.* Stewart, 7 Harris 45, and The Mutual Protection Co. *v.* Schell, 5 Casey 31, cited, are not. The controversies in these cases arose on a clause similar to the 17th section of the by-laws of this company, which provides that where any *alteration* or *change* of occupants shall be made to any building, if the risk is not increased, the secretary shall enter on the policy "*altered*, but not *endangered*," and give the insured a certificate thereof. Under such a clause, it is not difficult to conceive of the possibility of such evidence being proper, and the cases show that it has been received. In such case the parties not having agreed upon what shall be a test of increased risk, that fact may therefore become a matter of opinion and testimony; but in the case in hand they have, namely, that any change or use of property which puts it out of the enumerated classes and rates, is to be regarded as conclusive of increased hazard. This offer presented the single question of the right to make the proposed proof, without reference to any supposed waiver of conditions, as insisted on in another point in the case. We think, for these reasons, the offer was properly rejected.

4. This offer, the rejection of which constitutes the 4th exception and the 4th assignment of error, was an effort to bring the plaintiff's case within the 17th section of the company's by-laws. There were two difficulties in the way of the admission of this testimony. The first was that the defendant's plea put in issue alone, an unauthorized alteration of the insured premises. This was denied *modo et formâ* by a general traverse. Under this issue the testimony was manifestly inapplicable. Had a license to alter been replied, it would have admitted evidence of a license assuredly, but whether the testimony offered would have been competent, is a matter of great doubt. Neither the plaintiff nor defendant had done what the by-laws required them to do in case of an alteration. The former had made no application to the secretary or managers to examine the premises, and certify his opinion whether the hazard was thereby increased or not. Nor did the latter without, or in the absence of such application, make any examination or give any such certificate. We see no error in refusing the offer. The testimony proved nothing like official action; in fact it proved a refusal to act at the time, not recurred to at any after time.

5. The 5th assignment of error, is to the rejection of the offer to prove the directions of the company, in November 1864, to the treasurer to make an assessment on all the premium notes of the

company *in force;* that he did so, and included among them the note of the plaintiff, on which there was an assessment of three dollars and ninety cents, which the plaintiff paid as per receipt, and which was retained by the company.

The defendant had given in evidence by the minutes of the board of managers, dated September 12th 1864, the action of the board on the application of the plaintiff for indemnity for the loss which had occurred on the 18th August previously, and their resolution, refusing the claim, with a declaration of a forfeiture of the policy for breach of conditions, and notice of this at the time to the plaintiff. It is very evident, that the action of the treasurer, in including the plaintiff's note, as subject to assessment, was a mistake on his part. He had no authority to include it, for the directions to assess applied, expressly, only to such notes as were *in force,* when the order was given. Some days prior to the direction to assess, which was on the 19th September 1864, the note had ceased to be obligatory or liable to any future assessments. The object was to establish a waiver of a breach of conditions. But this never occurs unless intended, or where the act relied on ought in equity to estop the party from denying it.

The doctrine of waiver seems applicable, properly speaking, only during the currency of the contract. No doubt if the company had called for an assessment on the plaintiff's note while the property was being used, after the application of steam, and with a knowledge of such alteration and use, it would have been estopped from setting that up. But that was not the case, as already shown. There must be knowledge to establish a waiver : 5 Denio 154 ; 235 Conn. Rep. 244 ; 19 Barb. 440 ; 38 Id. 402. After a policy is forfeited, I see not how it could be renewed or revivified, except by an express agreement of the insurers. That it can only be done in this mode, seems to be the doctrine of the case of Carroll *v.* The Charter Oak Insurance Company, 38 Barb. 402. The policy here was forfeited by the action of the board, of which the plaintiff had notice, not only actually, but constructively ; a payment of an assessment, especially on a mutual premium note, after this, can be regarded in no other light, we think, than as voluntary. No resistance was made in this instance, or application to the board on the subject.

Without pursuing this line of thought further, however, it might be enough to say, that the issue did not admit of the introduction of the testimony proposed. But there was an offer to amend the replication by replying the waiver specially. In looking at the proposed amendment, it will be noticed that it rests the proposed waiver solely on the act of the treasurer, without involving the assent of the company or alleging it. It is evident if all the facts had been in evidence, they might have been demurred to. A waiver could not have been inferred from them. An amendment

[Diehl v. Adams Co. Mutual Ins. Co.]

refused which could not aid the party's case, would hardly be error.

But waiving this, we think the court committed no error in refusing it on the ground stated. It was entirely inconsistent with the replication filed, which made the issue; it would therefore have been double, as held by the learned judge. More than this, it introduced entirely new matter in reply. It was not an amendment of form at all, it seems to me. Nor was it demandable of right under the Act of 1806. One of the first decisions under that act by this court, was Austin v. Ingraham, 4 Yeates 347, in which it was held that the act did not extend further than to an amendment of the declaration or statement, or to the plea or defence. It does not reach to replications, rejoinders, &c. Such amendments, therefore, are as at common law, and to be tested only by the question of the exercise of a legal discretion. We think in no aspect of the question, was there error in the ruling of the learned judge, either in regard to the amendment or the admissibility of the evidence.

Judgment affirmed.