## Long *versus* Beeber, Receiver of the Lycoming Fire Insurance Company.

A policy of fire insurance contained a condition that if the insured premises "shall be occupied or used so as to increase the risk, or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever, without the assent of this company endorsed hereon, then, and in every such case, this policy shall be void." The insured premises consisted of a barn and farm buildings in the occupation of a tenant of the insured. In an action by the insured to recover for destruction of the barn by fire, the defendant was permitted to introduce evidence to show that at the time the policy was issued none of the farm operations were conducted by steam power, and that the tenant subsequently used a portable boiler and steam engine for threshing, which it was claimed, caused the fire.

*Held*, that the evidence was properly received and submitted to the jury, with instructions that if they found that the introduction of steam power increased the risk, the plaintiff could not recover.

*Held*, further, that it was immaterial whether the act of the tenant was with or without the knowledge or assent of his landlord, the plaintiff.

April 30, 1884. Before GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. MERCUR, C. J., and CLARK, J., absent.

ERROR to the Court of Common Pleas of *Clinton county :* Of July Term, 1883, No. 48.

This was an action of assumpsit by Joseph H. Long against J. A. Beeber, receiver of the Lycoming Fire Insurance Company, upon a policy of insurance issued February 19, 1878, for five years, by said company to the plaintiff, upon a dwelling house, barn, wagon sheds, &c., on plaintiff's farm, then in the occupation of a tenant. The barn, wagon sheds, &c., were destroyed by fire September 21, 1880, during the life of the policy.

The policy contained, inter alia, the following clause :

[Long v. Beeber.]

(1) . . . . . " or if the above mentioned premises shall be occupied or used so as to increase the risk, . . . . . or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever, without the assent of this company endorsed hereon; . . . . . then, and in every such case, this policy shall be void."

On the trial, before ORVIS, J., the defendant made the following offer:

" Defendant offers to prove by Alonzo Fraizer, the witness on the stand, and by other witnesses: That the fire which destroyed the property for which the plaintiff claims to recover in this suit originated from a portable steam engine, located from twenty to thirty feet from the main barn, and much nearer to the wings or sheds connected with said barn, and used for driving a threshing machine, located in said barn, which increased the risk of fire to said premises, that the said engine was put in said place, and used by authority of, and with the consent of the plaintiff or the tenant in possession of said property; that prior to that time, no steam power had been used in or about said buildings, nor had it been used in the neighborhood of the property destroyed, for threshing or other farming purposes; this, for the purpose of showing that section first of the policy had been violated by the insured.

Objected to. (1) Because it is not offered therein to prove that the portable engine was permanently placed in the position stated, or for such length of time that the plaintiff in the reasonable oversight of his property might have discovered the position of the engine; or that the engine was used by the directions or assent of the plaintiff, it being admitted that the insured premises were occupied at the time of the loss by a tenant of the plaintiff. (2) Because it is not offered to prove that the loss was caused by the use in the ordinary and customary way of the portable engine, and that the loss did not occur from accident occurring as a consequence or effect of such ordinary use of the engine. (3) Because incompetent for the purpose stated. (4) Because irrelevant.

Objections overruled; exception.

The witness testified in substance as set forth in the above offer. Long himself, testified as follows:

*Q.* State whether you gave your assent to the use of that steam thresher on your premises? *A.* My memory don't serve me, but what I know I heard from Mr. Tyce, he said here on the witness stand, brings it to my recollection.

*Q.* Did he ask you whether he could use that steam thresher, to thresh out his crop? *A.* I think not. *Q.* Did you know that it was being used before the fire occurred? *A.* I did not. *Q.* Did you authorize its use? *A.* I think not.

*Q.* Did you assent to its use? *A.* I may have talked
with Mr. Tyce, before he used the machine, but I do not
mind of any conversation with Mr. Tyce in particular about
it, but since Mr. Tyce has testified that I had such a conver-
sation, I have a faint recollection, and I told him I considered
a steam thresher dangerous, but I do not think I gave my
assent to its use; I had no knowledge of steam threshers, be-
fore that time.

The plaintiff submitted, inter alia, the following points:

1. That there being no stipulation contained in the policy
of insurance declared on, or in the terms and provisions of
the said policy providing that the company, the defendant,
should not be liable for the payment of damages to the prop-
erty insured by said policy, caused by fire originating from
threshing grain with a steam threshing machine, or from the
use of steam in the vicinity of the buildings insured, in the
absence of fraud on the part of the plaintiff, and if the evi-
dence on his part touching the amount of damages sustained
by him is believed by the jury, he is entitled to recover in this
suit, for the damages caused by the fire on the 21st day of
September, 1880, to the property insured by said policy, viz:
$1,250 damages for the destruction of the barn; $250 for de-
struction of the frame wagon shed, corn crib and pig pen, and
$10, for damages to the dwelling house, with interest from
ninety days after the delivery of the proofs of loss to the com-
pany, the defendant.

Answer. "We cannot affirm this point, as it is stated.
Because there was no provision in the policy against the use
of steam threshers, it was not specifically expressed in the
policy that no steam thresher should be used at all, that then
the use of a steam thresher under any circumstances would
avoid the policy, but we do say, if the simple fact of using it
did not increase the risk, that then the policy would not be
avoided, and the plaintiff would be entitled to recover, and
we submit that question to you, gentleman of the jury, to de-
termine whether there was any increased risk or not."

2. That if the jury believe that the fire which caused the
destruction of the barn and other buildings, and the damage
to the dwelling house, insured by the policy declared on in
this suit, on the 21st day of September, 1880, did originate
from the temporary use in the vicinity of the said barn, of the
steam engine described, in threshing grain at the barn, used
by the directions of Solomon Tyce, the tenant of the plaintiff,
and that the steam engine was thus used and employed with-
out the knowledge or consent of the plaintiff, then he is
entitled to recover in this suit the actual damages sustained
by him in the destruction by said fire of the said barn and

[Long *v.* Beeber.]

other buildings insured by said policy, the damages to be recovered for the buildings destroyed not to exceed the sum of the amounts insured thereon, respectively.

Answer. "If we understand this point, the counsel ask us to say to you, that even though you might find that the use of this engine by the tenant, did increase the danger or risk of fire, yet if it was done without the direction or assent of the owner, that the plaintiff would still be entitled to recover. We cannot so instruct you, for our understanding of the law is just the reverse, and we instruct you, even though it was done without the consent or knowledge of the lessor, it still avoids the policy, if there was an increased risk by its use, and with this understanding of this point, we refuse to affirm it."

The court in its charge submitted to the jury the question of increase of risk, in the following language:

" We will read to you the condition in this policy under which it is claimed that the use of this engine there on those premises, was a violation of the contract. It is the first section of the policy, about the middle of the section, and this is the clause: 'That if the above mentioned premises, shall be occupied or used so as to increase the risk, or become vacant and unoccupied more than thirty days, or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever, without the assent of this company endorsed thereon, then and in every such case, this policy shall be void.' This is the clause which the defendant claims has been violated, and which violation he alleges avoids the policy. Now that being a stipulation in the policy itself, it is a part of the contract between the party assured and the company, and Mr. Long when he accepted the policy agreed to that condition contained in it. If under the terms of that policy he has so occupied and used his premises as to increase the risk of loss by fire, by carrying on or exercising therein any trade, business or vocation whatever, whereby the risk of loss by fire, was, without the consent of the company, increased, then this policy is void and would be of no effect. . . . . Now, we propose to submit the question of fact to you to determine from all the evidence upon that subject, whether or not, the use of that steam threshing machine upon the premises of Mr. Long, did or did not increase the risk of loss by fire. If it did increase the risk under the clause of the policy we have read to you, then we instruct you that you must find for the defendant, for it was then a violation of the terms or expressed conditions of the policy, and the company would not be liable for any loss that occurred while it was being so used and the

plaintiff would not be entitled to recover the amount that he seeks to recover in this action."

" We say to you also with regard to the knowledge of Mr. Long that this steam thresher was used there, whether he knew it or not, or whether he authorized it or not, makes no difference. That is a question of no materiality whatever in this case. Mr. Tyce, the tenant under Mr. Long, stood in relation to him as agent, as far as this insurance company is concerned, and any act of Mr. Tyce could not affect the rights of the insurance company under this policy, and we say to you that it has nothing to do with this case. There is only one question in our opinion in this case for you to determine, under all the evidence in it, which is the simple question as to whether or not the use of that steam engine or steam threshing machine did increase the risk from fire. If it did, then we say to you, under the terms of this policy which we have read to you, the plaintiff is not entitled to recover and you should render a general verdict for the defendant. If, however, you should find from all the evidence in the case, that the use of that steam threshing machine on the premises of Mr. Long on the 21st of September, 1880, did not increase the risk from fire under the terms of the policy which we have read to you, then your verdict should be for the plaintiff for $1,510, with interest from ninety days after the proof of loss was made."

Verdict and judgment for the defendant. The plaintiff took this writ of error, assigning for error, inter alia, the admission of defendant's offer of evidence as above, the answers to points and portions of the charge above quoted.

*Cline G. Furst,* (*J. R. Youngman* with him,) for the plaintiff in error.—The meaning of the clause claimed to have been violated manifestly was to prohibit only such permanent occupancy or use of the insured premises as would increase the risk, such as would result from a change to a more dangerous occupation, or from the erection of neighboring buildings. The use of a portable engine in the vicinity of the barn, is not in terms forbidden in the policy, and if precluded the interdiction must be found, if found at all, in the clause in question. In the first portion of this clause the words, " occupied or used," being employed disjunctively are synonymous and signify, not an exceptional or casual change or use increasing the risk, but as already stated, a permanent increase of risk. The court put the ability of the tenant to forfeit the plaintiff's policy on the ground of a supposed agency arising from the tenancy—that the acts of the tenant in law, without regard to the period of their duration are taken to be

[Long v. Beeber.]

committed by his landlord; but such ground is untenable; for if it be true that all the acts of the tenant are taken as performed by his landlord, then it must result, if the tenant in possession willfully and maliciously burns his landlord's insured barn his indemnity fails, which will not be pretended. So far from being the agent of his landlord, he is liable, at common law, to him for permissive waste, in case the demised premises are destroyed by fire through his negligence: 4 Kent Com. 81.

*Jesse Merrill* and *H. W. Watson*, for the defendant in error, were not heard.

Mr. Justice GORDON delivered the opinion of the court, April 30, 1884.

It is a very plain proposition, and one that ordinarily will not be disputed, that where a man makes an agreement with another, he should himself comply with its terms and conditions if he would insist upon a compliance on part of him with whom he has contracted. Following a rule of this kind, it was held, in the case of McClure *v.* The Watertown Fire Insurance Company, 9 Nor., 277, that when a condition in a policy is unambiguous, the insured cannot avoid a compliance with its terms, by showing an honest, though unsuccessful, effort to comply therewith. In the case in hand there can be no doubt that the condition, upon the breach of which the defence was rested, was both reasonable and unambiguous. The company, for a fixed price, insured the building as it was at the date of the policy; it took upon itself that hazard and none other, and to avoid all dispute as to what it did insure, the condition was introduced that if the risk was increased by the erection or occupation of neighboring buildings, or *by any means whatever*, without the assent of the company, the policy should be void, and, subject to this condition, the plaintiff accepted this policy. There is no doubt about the just and binding character of this contract, and if the insured did, in fact, without the assent of the insurer, either by himself or tenant, do anything to increase the risk, the contract was violated, and he must bear the consequences. Whether the risk of fire was increased by the temporary use of the steam thresher at the barn, was a question properly submitted to the jury, and of that submission there can be justly no complaint. The argument, however, is that, with the use and employment of this steam engine, the plaintiff had nothing to do, but that it was hired and used, without his knowledge and assent, by Solomon Tyce, his tenant. But we do not understand that the indiscretion of Long's tenant was one of the risks which

[Cake *v.* Cake.]

the defendant took upon itself, and if not, we cannot see how it can be made liable therefor. In this particular the case is very like that of Diehl *v.* Adams County Mutual Insurance Co., 8 P. F. S., 443. In that case the tenant, without the acquiescence or assent of his landlord, had increased the risk of the insured premises by the erection of steam works on a public alley adjacent thereto; held that the fact that the erection was by the tenant, was no excuse for an infringement of the covenants in the policy; that the possession of the tenant was the possession of the lessor; that he continued to be the insured party, and that the covenants he entered into when his property was insured continued whether he occupied it personally or by his tenant.

This case is so nearly like the one in hand that the one may be regarded as ruling the other. The principal difference is, that in the one the erection was permanent, but was not the cause of the fire which destroyed the insured building; in the other the erection was temporary, but caused the loss. Now, let it be that this temporary use only suspended the policy during the time the thresher was in operation, yet, as the loss occurred during that time, the effect is the same as though the objectionable structure had been permanent. Nor does the landlord's knowledge of the act of the tenant form a material element of the case; as we have seen from the case above cited, the violation by the tenant is legally a violation by the lessor. Furthermore, the condition is not limited to an act personal or permissive on part of the insured, but the provision is that the premises shall not be occupied or used so as to increase the risk, and it therefore became Long's duty to see that they were not so used.

The judgment is affirmed.