## Petro Bitonti v. National Liberty Insurance Company of America, Appellant.

Argued April 16, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Linn V. Phillips,* of *Playford & Phillips,* for appellant.—The tenant's occupancy and possession was that of the landlord: McClure v. Watertown Fire Ins. Co., 90 Pa. 277; McCurdy v. Orient Insurance Co., 30 Pa. Superior Ct. 77.

The tenant's declarations were admissible as part of *res gestae*: First National Bank v. Home Ins. Co., 274 Pa. 133; Moyer v. Pgh., Mars & Butler Railway, 275 Pa. 363.

*W. A. Miller,* and with him *N. W. Rosenberg* and *Harry W. Byrne,* for appellee.—The tenant's declarations were made long after the fire and were not part of *res gestae*: Riley v. Carnegie Steel Co., 276 Pa. 82; Johnston v. Payne-Yost Construction Co., 292 Pa. 509; Leonard v. Balto. & Ohio R. R., 259 Pa. 51.

Opinion by Baldrige, J., July 2, 1929:
On the 21st of February, 1926, a one-story dwelling

house owned by the plaintiff and insured with the appellant company, was burned. The appellant company refused to pay the insurance, claiming that the fire was caused by the explosion of a still, the operation of which materially increased the fire hazard. Suit was brought and after hearing the evidence the trial judge directed a verdict for the plaintiff. The appellant contends that the court erred in (a) rejecting certain evidence; (b) directing the jury that under all the evidence their verdict should be for the plaintiff.

The appellant offered to prove by the fire chief of the Borough of Belle Vernon that he, in company with a deputy fire marshal of the Commonwealth of Pennsylvania, interviewed the tenant of the plaintiff who occupied the house at the time it was burned, and that he stated that the fire was due to an explosion of a still, and that Lewis Cinimo (son-in-law of Bitonti) was so badly burned that he died shortly thereafter, for the purpose of showing the cause of the fire. It was contended that this conversation was competent as a part of the res-gestae. The court excluded the testimony on the ground that it was a narration of a past occurrence and was not an utterance accompanying or immediately succeeding the fire that made it admissible as part of the res-gestae. This statement was made many hours after the fire so that the witness had plenty of opportunity for reflection and premeditation, and therefore it was not a spontaneous statement and admissible as an exception to the hearsay rule; it was properly excluded: Riley v. Carnegie Steel Co., 276 Pa. 82; Johnston v. Payne-Yost Construction Co., 292 Pa. 509.

The second question involves the determination of whether the unknown or unauthorized act of a third person will avoid a policy where it contains a provision as follows: "This company shall not be liable

for loss or damage occurring, ...... (b) while the hazard is increased by any means within the control of the insured.''

The house that was burned was located about fifty yards from where the owner lived. He testified he had leased it to Rosso Zolaro, although, according to the testimony of W. R. Harvey, the fire chief, he stated to him that he leased it to his son-in-law. The plaintiff also testified that Zolaro lived in the house he rented him with his family, but the testimony offered upon the part of the defense was that Zolaro rented another house and that he lived with his family ''on the other side of the hollow,'' and it was in the latter house that the chief, W. R. Harvey, saw him the morning after the fire with his head and hands bandaged. The fire occurred at 1:30 in the morning, and, according to the testimony of Carlyle Beatty, a member of the volunteer fire department, when the department arrived the building was burned; that he saw a still and a number of burned barrels and also a couple of metal containers with coils attached to them; that he saw ''liquid fire running from the building that was on fire'' and barrels containing liquid in which corn and other grain was soaking. He was corroborated in part by W. R. Harvey, the chief of the fire department, who was out of town that night, but who arrived at the scene of the fire early the next morning and described the presence of five-gallon cans containing corn, wheat and mash.

The appellee said he knew nothing about the fire as he was in bed and while he had learned that his son-in-law had died, he did not know that his death resulted from injuries received in the fire, or the cause of his death, although he was on friendly relations with his son-in-law.

The authorities in Pennsylvania hold that occupancy

of a house by a tenant is the occupancy by the landlord; that a violation of the terms of the policy by a tenant is a violation by the landlord; that a lessor continues to be the insured party, and that the conditions and covenants in a policy are binding whether he occupies the premises, personally, or by a tenant: Diehl v. Adams County Mutual Insurance Co., 58 Pa. 443.

In Long v. Beeber, 106 Pa. 466, the tenant, without the knowledge or consent of his landlord, increased the hazard by erecting a steam works in a public alley adjacent to the leased premises. The court held that when an insurance company, for a fixed price, insures a building, it takes upon itself the hazard provided for and none other, and if the risk is increased without its assent, the policy is void.

In McCurdy v. Orient Insurance Co., 30 Pa. Superior Ct. 77, the policy provided that no gasoline should be kept, used or allowed on the premises, and a tenant of the insured, without the latter's knowledge, set up in the premises a gasoline stove for domestic purposes. A fire resulted and it was decided that the insurance company was not liable. The landlord contended that she had forbidden the tenant to use a gasoline stove and did not know there was one in the house and that, therefore, the prohibitory condition did not affect her. The court said that the question involved was one of contract between the insurance company and the landlord, and that it did not relieve her to show that an act violating the terms of the contract was done without her knowledge by a tenant.

None of the policies, however, in the cases referred to provides that the policy should be avoided if the hazard is increased by any means within the control of the insured.

In Central Abattoir Co., Inc. v. London and Scottish

Assurance Corporation, Ltd., 91 Pa. Superior Ct. 327, the policy contained a provision, as in the case at bar, that the insurer "shall not be liable for loss or damage occurring while the hazard is increased by any means within the control of the insured." Evidence was offered by the defense to show that after the premises had been insured as an abattoir and cold storage plant, the premises were leased and the lessee established a distillery, which required the use of large quantities of alcohol, and that a fire resulted from an explosion growing out of the distilling operation. The court held that as the officers of the company frequently, during the tenancy, visited the premises and that as people in the neighborhood, not particularly interested in the property, knew the nature of the business being transacted, that it was a question for the jury to determine whether or not the company was chargeable with the knowledge of how their leased property was being used, and if they knew the business that was being carried on and failed to exercise the authority that was in their lease because of the use of their premises for more hazardous business than was contemplated, that an action could not be sustained on the policy.

The weight of authority is that where a policy contains the provision under consideration that unless knowledge of the insured of the hazard is shown, the policy will not be avoided: Royal Exchange Assurance of London v. Thrower, 246 Federal Reporter 768; 28 Corpus Juris 221; Waggonick v. Westchester Fire Insurance Co., 34 Ill. App. 629; Northern Assurance Co. of London v. Crawford, 59 S. W. 916; McKee v. Insurance Co., 135 Pa. 544; Rife v. Insurance Co., 115 Pa. 530; Cooley's Brief on Insurance, 2nd Edition, page 2534.

There was no evidence offered that Bitonti had any

interest in or knowledge of the operation of the still, or that it was under his influence, either directly or indirectly. No one testified as to the length of time the still had been used or that it was generally known in the neighborhood that the tenant had been conducting an illegal business in the house. There were no facts adduced showing that Bitonti had either actual or constructive notice of the illegal conduct of his tenant. It could not be said, therefore, notwithstanding the suspicious circumstances disclosed after the fire, that there was an increased hazard under the control of the landlord as contemplated by the provisions of the policy.

The judgment of the lower court is affirmed.