Smith, Appellant, et al. *v.* Penn Township Mutual Fire Association.

Smith, Appellant, et al. *v.* Mt. Joy Township Mutual Fire Insurance Company.

Smith, Appellant, et al. *v.* Lititz Agricultural Mutual Fire Insurance Company.

94

Argued April 15, 1936.　Before Kephart, C. J., Schaffer, Drew, Linn, Stern and Barnes, JJ.

*W. B. Eilenberger,* with him *Harvey Huffman* and *Harold C. Edwards,* for appellant.

*F. B. Holmes,* with him *Douglass D. Storey,* for appellee.

OPINION BY MR. JUSTICE STERN, June 26, 1936:

Plaintiff Margaret B. Smith took out three policies of fire insurance, one of the Mount Joy Township Mutual Fire Insurance Company in the sum of $3,000, dated August 24, 1931, another of the Penn Township Mutual Fire Association of Lancaster County in the sum of $7,000, dated September 22, 1931, and the third of the Lititz Agricultural Mutual Fire Insurance Company in the sum of $3,500, dated April 14, 1932. The first two of these policies were "On the Season story Slate roof, frame building and additions thereto, adjoining and communicating, all while occupied as a dwelling house," etc. They contained a mortgagee clause payable to plaintiff Edith D. Ziegler.* Of the amount of the policy in the Lititz Company, $2,000 was on household furniture and other personal property; the balance was on a garage and its contents not involved in the present controversy.

The building insured was a large house containing 14 rooms, five baths and seven porches, located at Canadensis, Monroe County, Pennsylvania. It had been built in 1917 by the husband of plaintiff Margaret B. Smith for the use of himself and family, and was known as "Viking Hall"; when he died in 1930 it passed to plaintiff. On March 15, 1933, she rented it to one James Dillinger for the term of one year; the lease contained a clause that if any illegal business were conducted on the premises it should constitute a forfeiture of the lease.

---

* The mortgage held by her was taken over by assignment by the two insurance companies after inception of the present suits, and was thereby eliminated as a factor in the proceedings.

On August 10, 1933, the building and most of its contents were destroyed by fire. Notice having been given, proofs of loss duly filed, and payment under the policies refused, suit was instituted, the three cases being tried together. The jury returned a verdict for plaintiff in each of them. Defendants took rules for a new trial and filed motions for judgment n. o. v. The court discharged the rules for a new trial, made absolute the motions for judgment n. o. v., and entered judgment for defendants.

The defense presented was breach of the condition that the insurance was to cover the property only while occupied as a dwelling house. Defendants produced witnesses who testified that from the time when Dillinger began his occupancy until the occurrence of the fire he conducted on the premises what in popular characterization is called a "speakeasy." He erected a large sign bearing the words "Viking Hall" on the highway near the entrance, maintained a bar, employed a bartender and waiter, sold sandwiches, beer and whiskey to customers, and carried on such service from seven o'clock in the evening until, on some occasions, three or four in the morning. He ran gambling slot machines, which were confiscated by the state police in a raid; Dillinger was arrested, indicted, pleaded guilty, and was sentenced to pay a fine. After this testimony had been presented, plaintiff, in rebuttal, called Dillinger to the stand, and, while he denied that anybody came to the place except "invited guests," or that he "sold" beer or liquor, he stated that the "guests" would leave money on the tables as a gratuity which he indulgently accepted. Indeed he admitted substantially all the basic facts testified to by defendants' witnesses and indicating that a continuous, though illegal, business was conducted by him on the premises. He said that his purpose was to form a "club" if enough members could be obtained for that purpose, but meanwhile he distributed "cards of membership" to various persons. He admitted the facts as to the existence of the bar and the operation of the slot machines,

that he had had tables made for the accommodation of guests and had erected the sign on the highway, that he had several people working around the place, including the bartender and waiter, that he had no license to sell beer or liquor, and that down to the very time of the fire he was applying at Harrisburg for a charter for a business corporation to operate a hotel and restaurant under the name of "Viking Hall, Inc."

By the terms of the policies covering the real estate no recovery could be had thereon unless at the time of the fire the premises were occupied as a dwelling house. Where there is such a condition in a policy, the fact that its violation is by a tenant of the insured, and without the latter's knowledge, does not avail the owner as an excuse for the breach: *Trustees of the Fire Assn. of Phila. v. Williamson*, 26 Pa. 196; *Diehl v. Adams Co. Mutual Ins. Co.*, 58 Pa. 443; *Long v. Beeber*, 106 Pa. 466; *Bitonti v. Nat. Liberty Ins. Co. of America*, 96 Pa. Superior Ct. 521. It is true that if the company has not declared a forfeiture of the policy because of such breach, and the violation ceases prior to the fire, there may be a recovery on the policy on the theory that it was not rendered void but was merely suspended during the time the violation existed *(McClure v. Mutual Fire Ins. Co. of Chester Co.*, 242 Pa. 59) ; but Dillinger's evidence in the present case indicated that his operation of business on the premises continued along the same line uninterruptedly from the time his occupancy began until the fire occurred. It was not necessary for defendants to prove that liquor was being sold at the very moment when the fire started.

Had the testimony been confined to that of defendants' witnesses, the case could not have been withdrawn from the jury, nor motion for judgment n. o. v. granted, because of the rule laid down in *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236; *Lilly v. Metropolitan Life Ins. Co.*, 318 Pa. 248, and similar cases. But conceding arguendo, though without deciding, that the burden of

proof was upon defendants to establish that the premises were not occupied as a dwelling house, rather than upon plaintiff to prove that it was so occupied, since in the present case defendants' contention was established by the evidence of *plaintiff's own witness* and there was no contradictory testimony by either party, obviously a different principle applies. Even had the defendants offered no testimony, the evidence presented by Dillinger himself would have necessitated the judgment which the court below entered in favor of the Penn Township and Mount Joy companies.

That Dillinger's testimony conclusively indicated that the premises were not occupied as a dwelling house within the meaning of the policies is too clear to require discussion. The mere fact that he and his wife and child lived there would not make this 14-room building a dwelling house any more than a hotel or an apartment house or office building would be a "dwelling house" because the owner, tenant or janitor lived there with his family. The determinative factor is the general and comprehensive use of the structure. While there may be another incidental use not inconsistent with occupancy as a dwelling, the situation is otherwise where a large part of the building is devoted to the systematic operation of a commercial enterprise. In the present case it was testified that the insurance rate on the premises if conducted as a "club" of the character described by the witnesses would be four times that paid by plaintiff for her insurance on this property as a dwelling house; indeed it was testified that clubs not under city fire protection could not obtain insurance at all.

Plaintiff contends that notice was given to the agency which issued the policies of the leasing to Dillinger and of the fact that "the purpose of the lease was to see if Mr. Dillinger could get enough people interested to form a club." Without deciding whether such notice, if received and disregarded by the companies, could sustain the argument that they had waived their rights to ob-

ject, it is sufficient to point out that the alleged "notice" was merely as to an intended future purpose of Dillinger and was not informative as to any then existing violation of the terms of the policy.

For the reasons stated the judgment for defendants Penn Township Mutual Fire Association of Lancaster County and Mount Joy Mutual Fire Insurance Company must be affirmed.

With respect to defendant Lititz Agricultural Mutual Fire Insurance Company, which issued the policy on the personal property, the facts are not identical with those in the other suits. The policy of that company, in fixing the amount of the insurance, stated as follows: "1. NIL. On the Season Story, slate roof, frame building and additions thereto adjoining and communicating, all while occupied as a Dwelling House. . . .

"2. $2,000. On household furniture, personal effects of every description . . . all while contained in the above described building and additions thereto adjoining and communicating."

There is no provision in the policy that the personal property insured is covered only while the building containing it is occupied as a dwelling house. The words "while occupied as a dwelling house" are not a part of the *description* of the property within the meaning of the phrase "above described building," etc.: *Home Ins. Co. v. Currie,* 54 Federal (2d) 203.

Defendant contends that recovery should be denied to plaintiff because of the increased hazard clause contained in the policy, which is as follows: "This company shall not be liable for loss or damage occurring . . . while the hazard is increased by any means within the control of the insured." It is established, however, that as far as such a clause is concerned, a policy will not be avoided unless it be shown that the insured had knowledge of the increase of the hazard: *Bitonti v. Nat. Liberty Ins. Co. of America,* 96 Pa. Superior Ct. 521. Plaintiff denied having such knowledge, and this

created a factual issue for the jury which was not submitted to them by the learned trial judge. It was also for the jury to determine whether an increase of hazard did result from Dillinger's use of the premises. The testimony of the witness H. C. Hafey was not clear as to whether the rates quoted by him applied to contents as well as to building, but in any event he was defendants' witness and therefore his testimony could not be used as the basis of binding instructions, or of judgment n. o. v., for defendant.

The judgments for defendants Penn Township Mutual Fire Association of Lancaster County and Mount Joy Mutual Fire Insurance Company are affirmed. The judgment for defendant Lititz Agricultural Mutual Fire Insurance Company is reversed, and its rule for a new trial is reinstated and herewith made absolute.