## Perry v. The Aetna Casualty and Surety Co.

*James A. Lafferty*, for plaintiff.
*Edward I. Dobin*, for defendant.

BIESTER, P. J., May 27, 1966.—This is an action in assumpsit, tried by the undersigned without a jury, upon a policy of fire insurance for damages arising out of the destruction of a barn by fire. From the evidence at the hearing and the depositions which, by agreement, form a part of the record, we make the following

## FINDINGS OF FACT

1. On November 2, 1961, The Aetna Casualty and Surety Company, defendant above named, insured the premises of William A. Perry and his wife, Margaret K. Perry, situate in Wrightstown Township, Bucks County, Pa., against loss by fire.

2. Said insurance policy listed amongst the "coverages" a barn situate upon said premises, the amount of the coverage allocated to this potential loss being $11,500.

3. Said barn was denominated in the insurance policy as an "appurtenant private structure".

4. As to appurtenant private structures, said policy specifically provided as follows:

"This coverage does not include: (a) any structure used in whole or in part for commercial, manufacturing or farming purposes".

5. On or about January 5, 1963, while said contract of insurance was in full force and effect, said barn so insured was totally destroyed by fire.

6. Edward Parry and Lawrence Parry, his brother (hereinafter called Parrys), were for many years prior to said loss engaged in farming operations in the immediate vicinity of plaintiff's property.

7. Following the death of their father on August 1, 1956, said Parrys used the barn in question to store hay and farming equipment, such use continuing to the date of the fire, except during the years 1960 and 1961.

8. The first use of the barn for such farming purposes by the Parrys, following the issuance of the fire

insurance policy, was in June of 1962, and such use continued until the date of the fire.

9. Beginning in June, 1962 and continuing to the fall of 1962, 30 tons of baled hay, approximately 900 bales, were stored in said barn by the Parrys.

10. The storage of said 30 tons of baled hay nearly filled that portion of the barn usable for such purposes.

11. Of said 30 tons of baled hay so stored, 15 tons were sold to a Mr. Worthington and 5 tons were sold to the Davis Feed Mill, there having been then about 10 tons of baled hay remaining in the barn at the time of the fire.

12. In removing the hay, it was necessary for Mr. Worthington to make "a half dozen or several" trips to achieve this purpose, and the Davis Feed Mill made approximately 5 trips in removing said hay.

13. William A. Perry, husband of plaintiff, died on June 18, 1962, and plaintiff knew of the use of the barn for the storage of hay just before his death.

14. Neither plaintiff nor her husband, prior to his death, was engaged in any type of farming operations.

15. In the fall of 1962, plaintiff saw one of the Parry brothers at the barn and a truck therein being loaded with hay.

16. Later in the fall of 1962, plaintiff saw Mr. Worthington on the driveway of her home with a wagon and was told by Mr. Worthington that he was there to remove hay.

17. At the time of the fire, in addition to the 10 tons of hay remaining in the barn, there were also stored therein by the Parrys farm machinery, consisting of a cultivator, elevator, blower, hay rake and distributor.

## DISCUSSION

Plaintiff herein seeks to avoid the express provision of the insurance contract on several theories. The first of these is that the barn was not being used for farm-

ing purposes. The rationale of this argument completely escapes us. A barn is a "covered building used chiefly for storing grain, hay, and other farm products": see Webster's New International Dictionary. Similar definitions are found in Black's Law Dictionary and Ballentine Law Dictionary. Since the testimony is clear that the barn was being used for such purpose and also for the storage of farm equipment, we can conceive of no more obvious farm purpose for a barn. The second theory is that this was but a sporadic and casual use. The complete answer to this theory is that the use was continuous for a period of some seven months up until the time of the fire. During this entire period, the general and comprehensive use of the structure was for farming purposes. The third contention is that plaintiff did not know, *as of the time of the fire*, that the barn was being used for the storage of hay. It is true that the policy with which we are dealing contains a provision that the insurer shall not be liable for loss occurring "while a hazard is increased by any means within the control or knowledge of the insured"; and we also agree that there are many cases holding that under such a provision of the policy, there must be knowledge on the part of the insured of the increased risk situation, examples of such cases being Franklin Fire Insurance Co. v. Gruver, 100 Pa. 266; Lebanon Mutual Insurance Company v. Losch, 109 Pa. 100; Petro Bitonti v. National Liberty Insurance Company of America, 96 Pa. Superior Ct. 521. We do not believe that it follows, even under such a clause in a policy when recovery of loss is resisted on the basis of increase in hazard, that the insured must be shown to know at the precise time of the fire how the building was being occupied, if it is amply demonstrated by the evidence that the insured knew of a proscribed use a short time before the fire, but made no observation or inspection to determine the existence of the continuance

of the forbidden usage. In any event, the carrier does not defend on the basis of increase of hazard, but rather on a breach of the terms of the policy. In such a situation, it is unrealistic to require the carrier to carry the burden of establishing knowledge of the inappropriate use at the precise time of the fire. The contract is explicit in forbidding the use of the barn for farming purposes, and this being the term of the policy, the parties are bound thereby. See Trustees of the Fire Association of Philadelphia v. Williamson, 26 Pa. 196, 198; Diehl v. The Adams County Mutual Insurance Company, 58 Pa. 443, 450; Long v. Beeber, Receiver of the Lycoming Fire Insurance Company, 106 Pa. 466, 469.

We have discovered no case both legally and factually akin to the present one, but the case of Smith v. Penn Township Mutual Fire Association, 323 Pa. 93, is apposite. There, the insurance covered the property only while the property was occupied as a dwelling house. The evidence was clear that the premises were actually used as a speakeasy. The court observed, page 97:

"By the terms of the policies covering the real estate no recovery could be had thereon unless at the time of the fire the premises were occupied as a dwelling house. Where there is such a condition in a policy, the fact that its violation is by a tenant of the insured, and without the latter's knowledge, does not avail the owner as an excuse for the breach; [citing cases]. It is true that if the company has not declared a forfeiture of the policy because of such breach, and the violation ceases prior to the fire, there may be a recovery on the policy on the theory that it was not rendered void but was merely suspended during the time the violation existed (McClure v. Mutual Fire Ins. Co. of Chester Co., 242 Pa. 59); but Dillinger's [the tenant's] evidence in the present case indicated that his operation

of business on the premises continued along the same line uninterruptedly from the time his occupancy began until the fire occurred. It was not necessary for defendants to prove that liquor was being sold at the very moment when the fire started".

There are, of course, distinctions between that case and the one now before us, but these distinctions militate against plaintiff and not in her favor. She was not an absentee owner, but resided upon the premises and, in addition, had knowledge of the violation of the terms of the policy. Under such circumstances, she cannot prevail in this suit.

### CONCLUSIONS OF LAW

1. The fire insurance policy to which the parties contracted eliminates from coverage a barn used for farming purposes.

2. The parties are bound by express provisions of the policy.

3. The storage of large quantities of hay and numerous farm machinery equipment in a barn constitutes using the barn for farming purposes.

4. There is no burden upon defendant to establish plaintiff's knowledge of the proscribed use as of the date of the fire.

5. The coverage is eliminated whether or not the farming usage is by the insured or any other person or persons.

### ORDER

And now, to wit, May 27, 1966, the trial judge finds in favor of defendant, The Aetna Casualty and Surety Co., and against plaintiff, Margaret K. Perry, and directs the prothonotary to enter judgment in accordance therewith.

### AMENDED ORDER

And now, to wit, June 28, 1966, the order entered in the above case is hereby amended to read as follows:

And now, to wit, May 27, 1966, the trial judge finds in favor of defendant, The Aetna Casualty and Surety Company, and against plaintiff, Margaret K. Perry, and if no exceptions thereto are filed within 30 days after service of notice, judgment shall be entered thereon by the prothonotary.