## R. H. McKEE v. SUSQ. MUT. F. INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 20, 1890—Decided June 2, 1890.
[To be reported.]

(a) A policy of insurance against fire upon a stock of goods, contained in a certain building, provided that the protection of the policy should be suspended " if the risk be changed in the occupation of the building," and that the insured should notify the company thereof and pay any additional premium demanded:

1. A change of occupancy, with which the insured had nothing to do, occurring in a part of the building which neither belonged to nor was rented by him, and over which he had no control, will not suspend the protection of the policy, though the insured gave no notice thereof, unless it be shown that he knew that the risk would be increased thereby.

(*b*) A policy stipulated that, in case of loss, the insured, whenever required, should submit to an examination or examinations on oath, and subscribe to such examinations when reduced to writing. After long-continued negotiations respecting a loss, the insured refused to answer questions under oath and to subscribe to answers previously given: '

2. It being shown that the insured had previously left his books, etc., at the office of the company, and had called there more than once in person for the purpose of explanation or examination, it was proper to submit to the jury the question whether the company had proceeded in a reasonable time and with proper diligence in making their examinations. '

Before PAXSON, C. J., STERRETT, GREEN, CLARK and McCOLLUM, JJ.

No. 292 January Term 1890, Sup. Ct.; court below, No. 43 March Term 1888, C. P.

On March 3, 1888, Robert H. McKee brought assumpsit against the Susquehanna Mutual Fire Insurance Company upon a policy of insurance against fire, issued to the plaintiff by . the defendant company. Subsequently the suit was marked to the use of John K. McKee. The defendant's plea was non-, assumpsit.

At the trial on October 23, 1889, the following facts were . shown: On November 5, 1886, the defendant company issued to the plaintiff, Robert H. McKee, its policy No. 8581, by which, . for a valuable consideration, it insured him against loss or dam-, age by fire or lightning to the extent of $3,000, as follows: "$1,500 on his stock of cigars, boxes, labels and moulds; $1,500 on his stock of leaf tobacco; all while contained in the two-story frame slate-roof building, occupied for storing agricultural implements and manufacturing cigars, situate at the corner of the Railroad and Main street, Stevens, Lancaster county, Pa., for the term of five years, from November 5, 1886, to November 5, 1891."

Among the conditions contained in the policy were the following:

"II. The protection of this policy shall become and remain

VOL. CXXXV—35

entirely suspended in each of the following instances, unless consent in writing be indorsed by the company hereon, viz.: . . .

"3. If the risk be changed in the occupation of the building or premises herein described, or by the erection or occupation of adjacent buildings; or by any means whatever."

· "VI. . . . .

"4. If the protection of this policy shall at any time become suspended, by reason of any of the stipulations in article II. of this policy, the assured hereby agrees to notify the secretary of the company thereof, and to pay such additional premium as the secretary may deem proper for the restoration of the policy."

"VII. PROCEEDINGS IN CASE OF LOSS.

"6. The assured shall, whenever and as often as called upon, exhibit to any person or persons named by this company, all that remains of the said property insured, damaged or not damaged, for examination. The assured shall also, whenever required, submit to an examination or examinations, under oath, by any person appointed by this company, and subscribe to such examinations when reduced to writing; and shall, also, as often as required, produce their books of account and other vouchers, and exhibit the same for examination, either at the office of this company or such other place as may be named by its agent, and permit extracts and copies thereof to be made; the assured shall also furnish certified copies of all bills and invoices of the property, the originals of which cannot be produced; and, unless such proofs, declarations and certificates as above specified are furnished, and examinations and appraisals made and permitted by the claimant, no loss shall be payable."

At the date of the policy, the insured was the lessee of the cellar and the second and third floors of the building mentioned in it, and as such was occupying and using the same for a cigar factory. The first floor was occupied by Heiser & Lutz, the owners of the building, for the storing of agricultural implements. Sometime after the policy had been issued, Heiser & Lutz partitioned off from their store-room a part of the first floor, and fitted it up and leased it for use as a barber shop. A stove was placed in it, the stove pipe being carried through an opening made in the side of the building and connected with a galvanized sheet iron pipe, which was run up, on

the outside of the building and about two feet from the wall, to a point above the roof. The barber and his son cooked and slept in the building. Before that, no one slept in it, and it was entirely unguarded at night. McKee did not inform the defendant company of the barber's occupancy and the alterations made in the building for the latter's accommodation.

B. K. Huntzinger, secretary of the defendant company, being upon the stand as a witness for it, was asked the following questions by the defendant's counsel:

Q. Does or does not the running of a stove pipe through the side of a building into a galvanized-iron pipe, braced to the side of a building two feet from it, and extending above the roof, make a more hazardous risk than a stove pipe connecting with a brick chimney built in the house?

Objected to.

By the court: Disallowed; exception.[1]

Q. Is an arrangement of this kind considered an extrahazardous risk by insurance men?

Objected to by the plaintiff.

By the court: Disallowed; exception.[2]

Q. Would the partitioning off, from a building used for storing agricultural implements, a portion thereof, and using the portion so divided off for a barber shop and for a cooking room for the occupants of the barber shop, make the building more hazardous to insure than it was before?

Objected to by plaintiff.

By the court: Disallowed; exception.[3]

Q. Would the partitioning off, of part of the building used for storing agricultural implements and as a cigar manufactory, and introducing into the part so partitioned off an additional occupant who occupies such part as a barber shop and for cooking and sleeping therein, change the risk of the building?

Objected to by plaintiff.

By the court: Disallowed; exception.[4]

Q. Have you heard the testimony given in this case? A. I have heard substantially all the testimony given in this case. I have been in the insurance business since 1865. Q. Would such a change in the use or occupancy of the building, as has been described in the testimony, increase the rates of insurance, in defendant's company, on goods in said building?

Objected to by plaintiff.

By the court: Disallowed; exception.[5]

On October 17, 1887, about two o'clock in the morning, a fire broke out in the second story, which totally destroyed the building and with it McKee's stock of tobacco and cigars. McKee at once notified the company of his loss, and on the day after the fire Huntzinger came, looked at the ruins and made some investigations respecting the loss sustained. He testified thus, as to the result of his examination:

"I took no memorandum of the cigars he claimed to have on hand. From my examination that day I was satisfied to do whatever the board would direct. I was satisfied, after I got his proof of loss and compared it with what I had received, that the loss was not so great as he stated. I was satisfied there was a loss."

On October 29, 1887, McKee sent to the company sworn proofs of loss, fixing the amount at $4,518.16. On the 4th of the following month, Huntzinger made an affidavit, appended to a copy of these proofs of loss, stating that the Phœnix Mutual Fire Insurance Company had reinsured the defendant company to the extent of $1,500 of this risk, and that the defendant company, by reason of said loss, claimed of the Phœnix company the sum of $1,500.

The plaintiff offered in evidence the proofs of loss, with the affidavit of Mr. Huntzinger, for the purpose of proving service of the notice of loss on the defendant, November 4, 1887. Admitted for the purpose of showing notice.

On November 12, 1887, Huntzinger wrote to McKee as follows: "In answer to your letter of the 11th inst. will say that the board has taken no action in your case, beyond referring the case to me to fix the amount of loss, to report fully at a future meeting. The proof of loss was received October 30th; and in no event would the loss be due under ninety days from that date, and presume the money will be paid if the same is found to be correct and just." No further communication took place between the parties until about the last of January 1888, when McKee again wrote to the secretary of the company. In response, he received a letter from Huntzinger dated February 2, 1888, as follows: "Our board has not yet taken final action on your claim; they will meet on the second Saturday, 11th

Statement of Facts.

of February, and I would suggest that you had better come to Harrisburg on that day and bring with you the books which you exhibited to me, and the inventory taken last June; and I believe that the matter can then be closed, at least the board can take final action in the premises." On February 11th, McKee sent his counsel, Mr. A. H. Fritchey, to Harrisburg to represent him. Mr. Fritchey arranged with Huntzinger that a committee of the directors of the company should meet Mc-Kee and his attorney, at the company's office one week later. On February 18, 23 and 27, 1888, McKee went to Harrisburg and had interviews with Huntzinger to whom the matter had been committed by the company. On these occasions, McKee took with him such of his books and papers as had not been destroyed by the fire, submitted them to Huntzinger's inspection, and answered such inquiries as were made of him by Huntzinger. The latter, however, alleged that he was not afforded sufficient time to complete his examination of McKee for the purpose of ascertaining the amount of stock on hand at the time of the fire, as McKee always arrived at Harrisburg about eleven o'clock in the morning, and left at four in the afternoon. The testimony for the plaintiff tended to show that on February 23d, Huntzinger, after going out to dinner at noon, remained away from his office for between two and three hours, and kept McKee waiting for him for that length of time. At the meeting on February 18th, McKee notified Huntzinger to join in submitting the adjustment of the loss to arbitrators, under article VII. of the policy. Huntzinger declined to do so until he should complete his examination.

On February 27, 1888, Huntzinger wrote to McKee as follows: "I could have finished my examination of yourself to-day if you had remained only a few more minutes at the office, and, of course, it will not take long to complete this at any time. You have already been informed that we want this examination completed and subscribed by you, and upon this we insist before completing our inquiry in other directions or taking final action in the matter of your claim. There are some entries in your books that require explanation from you; and, in order that the whole matter may be closed and final and definite action be taken with the least possible delay, I will remain at home, to meet you, on Wednesday, the 29th inst., for

Charge of Court below.

the purpose of finishing this examination. But because I have plenty of other work on hand I will not likely be at home this week after Wednesday. You may telegraph me, at my expense, on receipt of this, what time I can look for your arrival here and I will be on hand in order to let you off as soon as possible."

McKee did not go to Harrisburg in response to this letter. On March 1, 1888, Huntzinger came to see McKee, bringing along a justice of the peace, and presented to McKee a series of written questions, requesting him to answer them under oath. McKee declined to do so and also declined, upon request, to sign Huntzinger's written statement of the examination previously made at Harrisburg.

At the close of the testimony, the court, LIVINGSTON, P. J., charged the jury in part as follows:

[It is claimed on the part of the defendant that the plaintiff refused to appear and submit to an examination such as the policy requires. The testimony shows that he presented himself for examination; that the committee appointed to examine did not meet him when he presented himself for their examination; that the authority was then delegated to the secretary, who tells you ·he examined until he was satisfied there was a loss, and he was willing to do as the board directed. The plaintiff was bound to submit to an examination or examinations, in any reasonable manner and at any reasonable time; and the company would be bound to make its examinations in a proper manner and at reasonable times. The company could not call upon him once a year until satisfied, or at any other unreasonable period. They must proceed in a reasonable time and use proper and due diligence in making their examination of the assured. It will be your duty to say whether this was done in this case.] [14] . . . . .

It is also claimed by this company that after the insurance there was an increased risk, of which they had no notice; and that therefore this policy was forfeited and became void. . . .

[The policy declares that the protection of the policy shall be and remain suspended, unless consent in writing be indorsed by the company on the policy, if the risk be changed in the occupation of the building or premises therein described, or by

Charge of Court below.

the erection of adjacent buildings, or by any means whatever. Consent of, or to whom? There is nothing in the policy which can in our judgment be construed to mean consent to the insurer to change the risk in the occupation of the building or premises occupied by him, and no change was made there. The company claim, that because the owners of the premises, a part of which was occupied by them, over which the plaintiff had no control whatever, partitioned off in the part they owned and occupied, no change being made in the part occupied by plaintiff, and nothing done by him to increase risk, by this change in occupation the policy became void. . . . . . That clause must be taken to mean, that if the risk be changed in the occupation of the building or premises by the party insured, or by some persons, means or measures, under his direction or control; and not to include a change in the occupation of that portion of the building not occupied, owned or leased by him, and over which he had no control. This appears to be the law of England as well as of America. . . . . This being our view of the law, we say to you that this policy was not suspended or rendered void at the time of the fire, but at that time was and remained in full force and virtue.] [15] . . . . .

The plaintiff requests the court to charge:

1. If the jury believe that Robert H. McKee, the plaintiff, met by appointment B. K. Huntzinger, secretary of the company defendant, and was ready and willing to submit to an examination under oath and subscribe to the same, and had produced his books of account and other vouchers, etc., to the defendant for examination, it was a substantial compliance, on the part of the plaintiff, of condition VII., § 6 of the policy.

Answer: Affirmed, provided he used due diligence in endeavoring to have an examination, and the defendant company did not use proper or due diligence in conducting and making such examination, and within a proper and reasonable time.[6]

3. Robert H. McKee, the plaintiff, was not obliged to give notice of a change in the use or occupancy of the building in which his insured goods were contained, which, in the fair exercise of his own knowledge and judgment, he believed would not increase the risk.

Answer: The evidence shows that no change of risk whatever was made in that portion of the premises leased and occu-

pied by plaintiff; that no change of risk whatever was made in any part of the premises, by him or any person or thing under his control. He was not bound to give notice to the company.[7]

4. The evidence must show not only that the occupation of the barber shop, since the issuing of the policy would increase the risk, but also that McKee, the plaintiff, knew that it would increase the risk.

Answer: This is the case where such change of risk or occupation is made by the insured or by some person or thing under his control.[8]

The defendant requests the court to charge:

1. The conditions of this policy being that the protection thereof shall become and remain entirely suspended if, inter alia, the risk be changed in the occupation of the building or premises therein described, or by the erection or occupation of adjacent buildings, or by any means whatever, without the consent of the company indorsed in writing thereon, and the evidence being undisputed, that after this policy was issued, a part of the building was partitioned off, so as to make additional rooms into which an additional tenant was introduced, who used an additional stove with pipe passing through the side of the building and upward along the same, the insured knowing of such change and having failed to give notice thereof, or to obtain the consent of the company thereto, it is not a question of inquiry for the jury as to whether or not the risk was thereby increased; such change was a violation of the condition of the policy, and the verdict must be for the defendant.

Answer: This is refused, there being no evidence to the effect that the insured changed the risk in the occupation of the building or premises described, etc., or that any change of the risk was made or permitted by him to be made by any person, thing or circumstance over which he had any control, or for the making of which he had any right to ask the consent of the company.[9]

2. The evidence in this case being undisputed, that the risk was changed by the introduction to the building of an additional occupant, and for purposes different from those stipulated for in the policy, without notice to or the consent of the company thereto, the protection of the policy became suspended

Charge of Court below.

and so remained at the time of the fire; and, therefore, there can be no recovery and the verdict must be for the defendant.

Answer: Refused for the same reasons as the answer to the first point.[10]

3. If the jury believe that the insured refused at any time to submit to an examination under oath by an agent of the insurer, and to subscribe to such examination as required by § 6, article VII. of the policy, there can be no recovery by the plaintiff in this action.

Answer: Yes, provided the company used proper and due diligence. Whether he did or not is a fact for the jury under the evidence.[11]

4. The mere appearance of Robert H. McKee, at the office of the company, and offering himself and his books and bills for examination, was not a compliance with § 6, article VII. of the policy, unless he has actually submitted to such examination by fully and freely answering all questions put to him by the agent of the company, appointed for that purpose, touching the loss.

Answer: Whether plaintiff appeared a sufficient number of times to have been examined, and the company failed to meet him and examine him with due diligence, or not, is for the jury. If he did, he did all that could be required of him; if the jury find he did not, he cannot recover.[12]

5. If the risk was changed in the occupation of the building or by any means whatever, without the consent of the company, the latter is absolved from the contract, though the fire was not caused by such change in the risk.

Answer: Not unless the change was by the insured or under his control.[13]

The jury rendered a verdict in favor of the plaintiff for $3,131.84. A rule for a new trial having been discharged, judgment was entered upon the verdict. Thereupon, the defendant took this appeal, assigning for error:

1–5. The refusal of the defendant's offers.[1 to 5]

6–8. The answers to the plaintiff's points.[6 to 8]

9–13. The answers to the defendant's points.[9 to 13]

14, 15. The parts of the charge embraced in [ ][14 15]

*Mr. Wm. R. Brinton* (with him *Mr. David McMullen*), for the appellant:

1. Such a change in a building as is shown by the undisputed evidence in this case, makes a risk much more hazardous. The court should have admitted our offers to show this, by a witness having accurate knowledge of the subject, and to show by expert testimony that insurance men would regard and treat this building, after the changes were made in it, as a more hazardous risk than before the making of them: Hartman v. Insurance Co., 21 Pa. 466; Daniels v. Insurance Co., 12 Cush. 416; Appleby v. Insurance Co., 54 N. Y. 253; Cormich v. Insurance Co., 74 N. Y. 295. However, upon a proper construction of the policy, we do not believe that the question, whether the alteration in the building increased the risk or not, should have been submitted to the jury. According to the plain meaning of the language used, any change should be communicated to the company, whether the insured thinks it material to the risk or not, so that the company can exercise its own judgment upon that question and its option to continue or cancel the policy: Calvert v. Insurance Co., 1 Allen 308. As this condition was violated by McKee, he cannot recover.

2. No matter by what means the risk was changed, the company was entitled to notice. The condition in the policy is not limited to an act personal or permissive on the part of the insured, and it was McKee's duty to give notice, no matter by whom the change in the risk was caused. Under the ruling of the court below, a part of the building might have been changed into a dynamite factory or a powder magazine, increasing the risk a thousand fold, and yet the insurer would have been entitled to no notice unless such change was made by the insured or by some one under his control. It is well settled that the stipulations of an insurance policy, not contrary to the common or statute law of the land, are binding on the parties and control their relative rights: 1 Wood on Fire Insurance, §§ 58, 64; N. W. Ins. Co. v. Phœnix Oil Co., 31 Pa. 448; West Br. Ins. Co. v. Helfenstein, 40 Pa. 289; Weisenberger v. Insurance Co., 56 Pa. 442; McClure v. Insurance Co., 90 Pa. 277. Under the language of the policy, McKee's knowledge of the increase of risk was immaterial; he was

bound to know it and inform the company: 1 Wood on Fire Insurance, §§ 95, 127, 206; Penn. Mut. Ins. Co. v. Schmidt, 119 Pa. 449; Hench v. Insurance Co., 122 Pa. 128.

3. It is immaterial, also, that the loss did not result from the change in the risk: 1 Wood on Fire Insurance, § 242; M. & M. Ins. Co. v. Kunkle, 6 W. N. 234. Having violated the condition, the insured cannot recover.    McKee also clearly violated another provision of the policy, by declining to submit to " examinations under oath," and to " subscribe to such examinations when reduced to writing."    The fact that he did so, and the other facts that occurred between the insured and the secretary of the company, were undisputed, and it was error to submit to the jury the question whether the company had used due diligence in making the examination within a reasonable time.    When the facts are undisputed, due diligence and reasonable time are questions of law for the court: Haly v. Brown, 5 Pa. 178; Bennett v. Young, 18 Pa. 261; Leaming v. Wise, 73 Pa. 173; Muncy Bor. School D. v. Commonwealth, 84 Pa. 464.    In the part of the charge set out in the fourteenth assignment of error, the court misstated the testimony of Huntzinger, so as to leave the jury under a very erroneous impression; this is cause for reversal: Goersen v. Commonwealth, 99 Pa. 388; Parker v. Donaldson, 6 W. & S. 132; Garrett v. Gonter, 42 Pa. 143; Heilbruner v. Wayte, 51 Pa. 259.

*Mr. H. C. Brubaker* (with him *Mr. A. H. Fritchey* and *Mr. G. C. Kennedy*), for the appellee:

1. The evident intention of the clause providing for notice to the company of any change, is that it shall apply, not to a change in the occupancy of the building merely, but only to a change in the risk taken by the company into one of greater hazard.    It is manifest that in this instance the hazard was diminished, instead of being increased.    The plaintiff knew that the occupancy of the building by the barber and his son was a protection, both to the building and to the stock of goods insured.    But, even if the risk was in fact increased by the alterations in the building, there is not a particle of evidence that the plaintiff knew this.    There may be cases in which the increase of risk is so palpable and plain that knowledge of it

by the insured must necessarily be inferred; but this inference must be drawn from evidence, direct or circumstantial, and there is none such in this case. The plaintiff was not bound to give notice of a change in the building, which, in the fair exercise of his own knowledge and judgment, he believed would not increase the hazard: Rife v. Insurance Co., 115 Pa. 532.

2. As there was no evidence that McKee knew the risk was increased, the offers of the defendant referred to in the first five assignments of error were inadmissible, and the defendant has no cause to complain of the answers of the court which are the subjects of the seventh, eighth, ninth, tenth and thirteenth assignments. Those answers could work no harm to it. In giving them, the court below followed Breuner v. Insurance Co., 51 Cal. 107 (21 Am. Rep. 703). The doctrine laid down in that case, that a change occasioned by a cause not within the control of the insured is not within a provision like the one in question here, is in accordance with reason and justice and is supported by the principle, reaffirmed in Rife v. Insurance Co., 115 Pa. 532, that the conditions of a policy must be construed most strongly against the company. The conduct of the defendant's secretary, after the fire, has the unmistakable flavor of sharp practice, and manifests an intention to impede the settlement of the loss. There can be no error in submitting to the jury the question whether the plaintiff appeared a sufficient number of times to enable the company to examine him and it failed to do so with due diligence, though it seems to us the court should promptly have disposed of this as a matter of law.

OPINION, MR. CHIEF JUSTICE PAXSON:

The appellant company insured the plaintiff against loss or damage by fire or lightning to the amount of $3,000, on his stock of tobacco, cigars, boxes, labels, etc. On October 17, 1887, during the life of the policy, his entire stock was destroyed by fire. On October 29, 1887, the plaintiff furnished the company with sworn proofs of loss, amounting to $4,518.16. The company declined to pay, and in the court below defended principally upon two grounds, viz.: (a) That the risk had been changed in the occupation of the building or premises insured, of which change no notice had been given to the company as

Opinion of the Court.

required by the policy; and (b) that the plaintiff did not sub-
mit himself, his books, papers, etc., to the company for exami-
nation, as also required by the policy.

In regard to the first objection, it appeared upon the trial below
that the premises occupied were a portion of a large building,
which portion only he had rented; that the changes in occu-
pancy referred to did not occur in the part he occupied; that,
some time after the insurance was effected, the landlord parti-
tioned off a portion of the building in his possession and under
his control, for a barber shop; this shop was rented to a tenant,
who occupied it for that purpose, and lived and slept there with
his son.   Prior to this occupancy by the barber, no one had slept
there; the building was wholly unprotected at night.   It also
appeared that a stove had been placed in the barber shop, and
a galvanized iron pipe or smoke-stack had been carried up out-
side the building, and about two feet therefrom, to a point some
distance above the roof.   This was, briefly stated, the change
of occupancy of which the company complains; a change with
which the plaintiff had nothing to do, and which did not occur
in any part of the premises occupied by him, and covered by
the policy.   Under these circumstances, the learned counsel
asked the court to instruct the jury that the change referred to
" was a violation of the condition of the policy, and the verdict
must be for the defendant;" (see defendant's first point, with
assignment of error.)   This was answered by the court as fol-
lows: " Refused, there being no evidence to the effect that the
insured changed the risk in the occupation of the building or
premises described, etc., or that any change of the risk was made
or permitted by him to be made by any person, thing, or circum-
stance over which he had any control, or for the making of
which he had any right to ask the consent of the company."
This answer was clearly correct.   The insured had made no
change of occupancy; he had no control over that portion of
the building; he might or might not have known of it; and,
if he had, there is nothing to show that he knew the risk would
be increased.   On the contrary, he might well have supposed
that it would be decreased by having some one to sleep in and
protect it at night.   The condition in the policy in regard to a
change of occupancy contemplates an increase of the risk.   Be-
fore the insured can be held to the duty of notifying the com-

pany of such increase, he must be shown to have known of it: Leb. Mut. Ins. Co. v. Losch, 109 Pa. 100 ; Rife v. Insurance Co., 115 Pa. 530.

The first above stated ground of defence was flimsy enough, but the second is more so.   The company had the books of the insured, and ample opportunity to examine them and him in regard to the loss.   The insured not only left his books at the office of the company, but called there more than once in person for the purpose of explanation or examination.   We need not go into detail upon this point.   It is sufficient to say that the action of the officers of the company was indicative of delay and an intention of lulling the insured into security, rather than a desire to promptly adjust and pay the loss.   Their conduct in this respect is the more remarkable from the fact, asserted in the argument at bar and not denied, that the company had re-insured $1,500 of this risk in the Phœnixville Fire Insurance Company; had used these same proofs of loss in making their claim upon that company, and had collected therefrom the full amount of such re-insurance.   Under such circumstances, a quibble over the proofs of loss is unbecoming.   We find no error in this record.

Judgment affirmed.

